STATE of Delaware, Plaintiff
Below, Appellant,

v.

Jermaine WRIGHT, Defendant
Below, Appellee.

No. 10, 2012.

Supreme Court of Delaware.

Submitted: Feb. 5, 2013.
Decided: May 24, 2013.
Amended: May 28, 2013.

See also 1998 WL 734771, 633 A.2d 329.

Paul R. Wallace, Esquire, Former Chief of Appeals, (argued), Gregory E. Smith, Esquire, Maria T. Knoll, Esquire and Danielle J. Brennan, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for Appellant.

Herbert W. Mondros, Esquire, Margolis Edelstein, Wilmington, Delaware; Of Counsel: Billy H. Nolas, Esquire, (argued), James Moreno, Esquire and Tracy Ulstad, Esquire, Federal Community Defender Office for the Eastern District of Pennsylvania, Philadelphia, Pennsylvania, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice, for the Majority:

In this appeal we consider whether a murder conviction must be overturned. The trial court granted appellee's fourth motion for postconviction relief, finding that his confession should have been excluded from evidence, and that the State improperly withheld evidence of a similar

crime that the police determined appellee did not commit. The trial court then granted bail for appellee. We hold that the trial court erred in reviewing the admissibility of the confession, *sua sponte*, and in concluding that there was a so-called *Brady* violation. The trial court also erred in deciding that appellee could be granted bail. The judgment is reversed.

### Factual and Procedural Background

On August 26, 1992, Jermaine Wright was convicted of first degree murder and other crimes arising from a 1991 robbery at the Hi–Way Inn bar and liquor store. Following a penalty hearing, Wright was sentenced to death on October 22, 1992. This Court affirmed Wright's conviction and sentence on direct appeal.[1] In 1994, the Superior Court granted Wright's first Superior Court Criminal Rule 61 postconviction motion, and vacated his sentence.[2] After a resentencing hearing, the Superior Court again sentenced Wright to death in 1995. This Court affirmed.[3] In 1997, Wright filed his second Rule 61 motion. This Court affirmed the Superior Court's denial of the motion.[4] In 2000, Wright filed a petition for writ of *habeas corpus* in the United States District Court for the District of Delaware. In 2003, while his *habeas* petition was pending in federal court, Wright filed his third Rule 61 motion. The Superior Court stayed that motion pending the outcome of the federal petition. In 2009, while the third Rule 61 motion was pending, Wright filed this fourth Rule 61 motion. Wright asked the District Court, which had not yet ruled on his petition for *habeas corpus*, to stay the federal proceedings so that he could exhaust his state law remedies. The District Court granted that motion.

In the fall of 2009, the Superior Court held seven days of hearings on Wright's motion, as amended. In January 2012, the Superior Court granted, in part, Wright's fourth Rule 61 motion. The trial court held that the admission of Wright's confession violated *Miranda v. Arizona*,[5] and that the State violated *Brady v. Maryland*,[6] when it withheld evidence of a similar crime committed at Brandywine Village Liquor Store ("BVLS") about 30 minutes prior to the Hi–Way Inn crime. As a result, the trial court vacated Wright's convictions. This appeal followed.

After several remands, the Superior Court determined that it had jurisdiction to conduct a second proof positive hearing and admit Wright to bail.[7] The trial court also found that Wright's trial counsel "was unaware of the exculpatory evidence stemming from the BVLS attempted robbery at the time of [Wright's] trial."[8] The mat-

---

1. *Wright v. State*, 633 A.2d 329 (Del.1993).

2. *State v. Wright*, 653 A.2d 288 (Del.Super.1994). Super. Ct. Cr. Rule 61 provides a remedy for a person "in custody or subject to future custody under a sentence of [the Superior Court] seeking to set aside a judgment of conviction or a sentence of death on the ground that the court lacked jurisdiction or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction or a capital sentence." Super. Ct.Crim. R. 61(a)(1).

3. *Wright v. State*, 671 A.2d 1353 (Del.1996).

4. *Wright v. State*, 746 A.2d 277 (Del.2000) (TABLE); *State v. Wright*, 1998 WL 734771 (Del.Super. Sept. 28, 1998).

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

7. *State v. Wright*, 2012 WL 1408981 (Del.Super. Apr. 2, 2012).

8. *State v. Wright*, 2012 WL 5964029, at *4 (Del.Super. Nov. 28, 2012).

ter has now been returned to this Court for review.

### Discussion

*No bail may be set before the appeal is decided.*

■ The first issue is whether the Superior Court has jurisdiction to grant bail when its decision vacating a capital murder conviction is on appeal. The Delaware Constitution provides that, "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great...."[9] Two statutes address the right to bail in capital cases—11 *Del. C.* §§ 2103 and 4502. Section 2103 provides:

(a) A capital crime shall not be bailable, and a person so charged shall be held in custody without bail until the charge be withdrawn, reduced or dismissed or until the court shall otherwise order after a trial which results in less than a conviction of a capital crime or except as provided in subsection (b) of this section. (b) The Superior Court may admit to bail a person charged with a capital crime if, after full inquiry, the Superior Court shall determine that there is good ground to doubt the truth of the accusation. . . .

Section 4502 addresses the requirements for a stay of execution:

No writ of error or writ of certiorari issuing from the Supreme Court in any criminal cause shall operate as a stay of execution of the sentence of the trial court unless ... the plaintiff in error obtains ... a certificate that there is reasonable ground to believe that there is error ... which might require a reversal of the judgment below.... In cases where sentence of death has been imposed, the trial court ... may stay

the execution of the death penalty pending the determination of the cause by the Supreme Court, but the defendant below shall not be released from custody.

■ Although the statutes do not directly address the circumstances presented here, they express the legislative intent that a person convicted of a capital crime may not be released on bail while that conviction is on appeal to this Court. Section 2103(a) states that a capital crime is not bailable unless the charge is withdrawn, reduced, dismissed or, after trial, the person is convicted of an offense less than a capital crime. None of those events have transpired. Section 2103(b) allows bail if the Superior Court determines that there is good ground to doubt the truth of the accusation. This subsection is inapplicable because Wright is not simply accused of a capital crime, he has been convicted of a capital crime. The statute does not authorize the Superior Court to reconsider the truth of the accusation, as if Wright had never been convicted, just because the Superior Court has vacated the conviction.

If there were any doubt on this point, Section 4502 makes it clear that the General Assembly intended convicted capital murderers to remain in custody pending an appeal. That statute addresses a stay of execution of the sentence, not the appeal. But, it provides that, even if there is reasonable ground to believe that a conviction might be reversed, the defendant in a capital case "shall not be released from custody." The trial court found that there were grounds for reversal, but that decision was appealed. Until the appeal is decided, Wright's conviction is not finally vacated. As a person convicted of a capital murder, Wright remains ineligible for bail.

---

9. Del. Const. art. I, § 12.

*There was no basis for the Superior Court to reconsider the admissibility of Wright's confession.*

■ This Court considers the procedural requirements of Rule 61 before addressing the merits of claims made in postconviction proceedings.[10] Rule 61(i) bars consideration of a postconviction motion, among other reasons, if it is untimely (Rule 61(i)(1)), repetitive (Rule 61(i)(2)), procedurally defaulted (Rule 61(i)(3)), or formerly adjudicated (Rule 61(i)(4)). Rule 61(i)(5) provides an exception to the first three bars if there is "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." In addition, a repetitive motion, or one formerly adjudicated, may be reconsidered "in the interest of justice."[11]

Notwithstanding the fact that the admissibility of Wright's confession has been challenged and upheld repeatedly,[12] the trial court found that there is an "actual innocence" exception embodied in Rule 61(i)(5), and that Wright satisfied his burden of showing that he is innocent and that there was a constitutional error in his trial.

The Superior Court then reviewed the *Miranda* warning Wright received at the beginning of his taped statement. It found that the warning was inherently confusing and that the warning did not adequately explain that Wright was entitled to have counsel appointed for him.

■ The Superior Court decided to address the adequacy of Wright's *Miranda* warnings *sua sponte.* It listened to the same videotaped confession that was the subject of a motion to suppress before trial; a claim of error on direct appeal; the second Rule 61 motion; and the appeal of that motion. Each challenge was rejected after addressing Wright's understanding of his *Miranda* rights.[13] In deciding Wright's fourth postconviction motion, the Superior Court did not have any new evidence upon which to conclude that Wright's *Miranda* warnings were defective.[14] "[A] defendant is not entitled to have a court re-examine an issue that has been previously resolved 'simply because the claim is refined or restated.' "[15] Wright did not ask for that relief, but if he had, there would be no basis on which to find that he overcame the procedural bar

10. *Younger v. State,* 580 A.2d 552, 554 (Del. 1990) (*citing Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

11. *See* Super. Ct.Crim. R. 61(i)(2), (4).

12. *See Wright v. State,* 746 A.2d 277, 2000 WL 139974 at *1 (Del. Jan. 18, 2000) (TABLE); *Wright v. State,* 633 A.2d 329, 334–35 (Del. 1993); *State v. Wright,* 1998 WL 734771, at *5–6 (Del.Super. Sept. 28, 1998); *State v. Wright,* 1992 WL 207255, at *3 (Del.Super. Aug. 6, 1992); *State v. Wright,* I.D. No. 91004136, at 16–17, 19–20 (Del.Super. Oct. 30, 1991) (ORDER).

13. *See Wright v. State,* 746 A.2d 277, 2000 WL 139974 at *1 (Del. Jan. 18, 2000) (TABLE); *Wright v. State,* 633 A.2d 329, 334–35 (Del. 1993); *State v. Wright,* 1998 WL 734771, at *5–6 (Del.Super. Sept. 28, 1998); *State v.*

*Wright,* 1992 WL 207255, at *3 (Del.Super. Aug. 6, 1992); *State v. Wright,* I.D. No. 91004136, at 16–17, 19–20 (Del.Super. Oct. 30, 1991) (ORDER).

14. Super. Ct.Crim. R. 61(i)(4); *see Richardson v. State,* 3 A.3d 233, 237 (Del.2010).

15. *Skinner v. State,* 607 A.2d 1170, 1172 (Del. 1992) (*quoting Riley v. State,* 585 A.2d 719, 721 (Del.1990)); *see also Sanders v. United States,* 373 U.S. 1, 7–22, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Salih v. State,* 962 A.2d 257, 2008 WL 4762323 at *2 (Del.2008) (TABLE); *Younger v. State,* 580 A.2d 552, 556 (Del.1990) (*citing Kuhlmann v. Wilson,* 477 U.S. 436, 445–55, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)).

of Rule 61(i)(4). Reconsideration is not warranted in the interest of justice.

*The Superior Court erred in finding a Brady violation.*

■■ Rule 61(i)(5) provides an exception to the procedural bars for "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." A colorable claim of a *Brady v. Maryland* violation falls within this exception.[16] The Superior Court found a *Brady* violation based on the State's failure to disclose evidence relating to a similar-in-time-and-proximity attempted robbery at BVLS.

Approximately forty minutes before the Hi–Way Inn crime, two young black males attempted to rob another liquor store, BVLS, which is located approximately 1.5 miles from the Hi–Way Inn. The description of the perpetrators given by the BVLS witness is similar to those given by the Hi–Way Inn witnesses. The suspects for both the BVLS attempt and the Hi–Way Inn crime were described as two black men in their early to mid-twenties; one man approximately six feet tall and the other one shorter; and one of whom was armed. The police recognized similarities between the two offenses in a February 2, 1991 police report, and two contemporaneous newspaper articles reported that police were considering a connection between the two crimes. The chief investigator of the BVLS attempted robbery ultimately ruled out Wright as a suspect in that crime.

■ In *Brady v. Maryland,* the United States Supreme Court held that the State's failure to disclose exculpatory evidence violates a defendant's due process rights.[17] "There are three components of a *Brady* violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[18] "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."[19] Because " 'procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it,' . . . the prosecutor has the means to discharge the government's *Brady* responsibility . . . ."[20]

The State was not aware of the BVLS crime and suspected similarities with the Hi-Way Inn crime. But a detective in the Wilmington Police Department was aware, and acknowledged the similarities between the two crimes in his report. Moreover, as the State points out, contemporaneous newspaper articles noted the possibility that the two crimes were connected. If the State had been more diligent, it would have discovered the police report long before trial, and this issue would be moot. Instead, the Court must assess whether the failure to disclose that information is a *Brady* violation.

16. *See Jackson v. State,* 770 A.2d 506, 515–16 (Del.2001).

17. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

18. *Starling v. State,* 882 A.2d 747, 756 (Del. 2005).

19. *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

20. *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555 (quoting *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

■ Assuming, without deciding, that the first two prongs were satisfied, the failure to disclose the BVLS information did not prejudice Wright. The third *Brady* factor requires that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [21] A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." [22] This Court has described the third prong as requiring that prejudice resulted from the failure to disclose.[23] No such prejudice has been shown.

Although the police initially thought there might be a connection between the BVLS and Hi–Way Inn crimes, their investigations did not find one. In addition, the BVLS crime was not solved. Under these circumstances, it is difficult to see how the fact that Wright was excluded as a participant in the BVLS crime would have materially added to his defense.

Wright confessed, and that confession was properly presented to the jury. It was powerful evidence. Wright explained the events leading up to the shooting in some detail. For example, he demonstrated where he, his co-defendant Lorinzo Dixon, and the victim were standing before the shooting; how the victim turned away and reached for something; and where in the back of his head the victim was shot. Wright also described the victim as having grayish hair with a little bald spot. And Wright was savvy enough to try to shift responsibility to Dixon. Wright repeatedly explained that Dixon forced him to shoot the victim by threatening to shoot Wright if he did not comply. Wright said he was scared and that Dixon "made me do it."

Wright's confession was the State's best evidence. Wright's defense was that he was elsewhere, with friends, at the time of the shooting. The jury did not believe his alibi. The BVLS "evidence" was theoretically exculpatory, if one overlooks the fact that the police decided there was no connection between the two crimes. But it had very little probative value. It did not bolster Wright's alibi defense or otherwise create a reasonable probability that the verdict would have been different.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is REVERSED. This matter is REMANDED for reinstatement of the convictions. Jurisdiction is not retained.

RIDGELY, Justice, dissenting:

I agree with the majority that the Superior Court erred in granting bail. I also agree that Wright's challenge to the admissibility of his confession is procedurally barred. The majority and I also agree that the allege *Brady* violation is not procedurally barred. I would affirm the Superior Court's decision granting a new trial because of a *Brady*[24] violation. The State did not disclose exculpatory evidence relating to an attempted robbery that

---

**21.** *Starling*, 882 A.2d at 756 (quoting *Jackson v. State*, 770 A.2d 506, 516 (Del.2001)) (internal quotation mark omitted); *see United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

**22.** *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375 (1985) (*quoting Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotation marks omitted).

**23.** *See Atkinson v. State*, 778 A.2d 1058, 1063 (Del.2001) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

**24.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

same evening at Brandywine Village Liquors ("BVLS"). Two young black males attempted to rob BVLS thirty to forty minutes before Philip Seifert was murdered at the Hi–Way Inn. BVLS is only a mile and a half away from the Hi–Way Inn. The police considered Wright as a suspect in the BVLS crime, but ruled him out based on a physical description by the BVLS clerk, and his review of Wright's photograph. In the proceedings below, the Superior Court concluded that the evidence relating to BVLS should have been produced to Wright's counsel, but was not. The majority finds no prejudice resulting from this failure to disclose this exculpatory evidence. The Superior Court did and so do I.

In *Brady v. Maryland,* the U.S. Supreme Court held that the State's failure to disclose exculpatory evidence violates a defendant's due process rights. The State must disclose the evidence to the defendant if: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[25] This Court has also described the third prong, the materiality prong, as requiring that prejudice resulted from the failure to disclose.[26]

The record supports the Superior Court's conclusion that evidence from the BVLS attempt was exculpatory. The evidence of this close in time and proximity robbery supports a reasonable inference that the BVLS perpetrators were also the Hi–Way Inn perpetrators, and thus that Wright was not involved in either crime.

The fact that there is also evidence that is inculpatory of Wright—which the Superior Court questioned—does not change the nature or the importance of this exculpatory evidence. The crimes occurred 1.5 miles apart within 40 minutes of each other. The police report from the BVLS robbery, based on the clerk's description, stated:

> In this case Suspect # 1 is described as a black male, 5'11", 160 lbs., slender build, 23–24 years old, was wearing all dark clothing except for a white baseball cap, he was clean shaven and a thin face and was armed with a long barrel blue steel handgun. Suspect # 2 is described as a black male, short, stock built, wearing a tan jacket, white or light colored pants and white sneakers, no further description.[27]

George Hummell, a Hi–Way Inn customer, described the two men leaving the Hi–Way Inn as being in their mid-twenties; one was approximately 6'0 weighing 170 pounds, and the other was approximately 5'8–5'10 weighing 160 pounds. Based on Hummel's description and the description provided by Debra Milner—a Hi–Way Inn employee—of the man seen in the bar earlier, police described the taller man as "wearing possibly a red flannel shirt, black knit hat, black waist type jacket, dark loose fitting pants [ ] and dark shoes." The shorter man was described as wearing "[a] baseball type cap, [and] dark clothing NFD."

The suspects for each were described as two black men in their early to mid-twenties, one approximately six feet and one shorter, and one of whom was armed.

---

**25.** *Starling v. State,* 882 A.2d 747, 756 (Del. 2005) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

**26.** *See Atkinson v. State,* 778 A.2d 1058, 1063 (Del.2001) (citing *Strickler v. Greene,* 527 U.S.

263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

**27.** Appendix to Appellant's Opening Brief at A5.

Although the BVLS crime was a mere attempt using a handgun, the overall similarities between the crimes and the descriptions support the Superior Court's determination that the BVLS evidence was exculpatory.

Nor did the Superior Court err in finding that the State suppressed the BVLS evidence. A police report by Detective Edward Mayfield acknowledged the possibility that the same suspects were involved in the BVLS and Hi–Way Inn crimes:

> [Detective Robert Moser] is a detective with the Wilmington Police Department and assisted this writer with this investigation.

> Detectives Merrill, Burke, Moser, and Writer met in regards to the similarity of cases and the possibility of the same set of suspects in an earlier attempted robbery.

> Detectives Merrill, Burke, and Moser informed writer that on the same date, Monday, 011491 about 40 minutes prior to the robbery/homicide their department had an attempted robbery with two, black, males with a handgun.

> A supplement will be forthcoming from the Wilmington Police Department.[28]

A contemporaneous news article also reported that police were considering a connection between the BVLS and Hi–Way Inn crimes.[29]

The State argues that "there can simply be no suppression when a newspaper of general circulation publishes multiple articles citing both State and Wilmington police officers who were investigating a possible connection between two crimes." In essence, the State asks this Court to adopt the broad rule—adopted by some jurisdictions[30]—that information published in a newspaper of general circulation cannot be suppressed under *Brady*. This due diligence rule has been criticized as inconsistent with *Brady*.[31] The Supreme Court, in *dicta*, has explained that "[a] rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."[32] In this case, we need not decide whether a due diligence rule applies because the exculpatory information included that Wright was ruled out as a suspect in the BVLS robbery, and that information was not published in the newspaper. The newspaper articles also did not include descriptions of the perpetrators or the existence of a videotape and photographs.

The U.S. Supreme Court has explained that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."[33] Because "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all

---

**28.** Appendix to Appellee's Answering Brief at B916–17.

**29.** Appendix to Appellant's Opening Brief at A30–31.

**30.** *United States v. Mullins*, 22 F.3d 1365, 1371–72 (6th Cir.1994); *Cauthern v. Bell*, 2010 WL 1408900, *36 (M.D.Tenn. Mar. 31, 2010); *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 305 (2002).

**31.** See generally Kate Weisburd, *Prosecutors Hide, Defendants Seek: The Erosion of Brady*

*Through the Defendant Due Diligence Rule*, 60 U.C.L.A. L.Rev. 138 (2012); Leslie Kuhn Thayer, *The Exclusive Control Requirement: Striking Another Blow to the Brady Doctrine*, 2011 Wis. L.Rev. 1027 (2011).

**32.** *Banks v. Dretke*, 540 U.S. 668, 696, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).

**33.** *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

relevant information on each case to every lawyer who deals with it, ... the prosecutor has the means to discharge the government's *Brady* responsibility."[34]

Here, the prosecutor was not aware of the BVLS crime and the suspected similarities with the Hi–Way Inn crime. But, a detective in the Wilmington Police Department was and acknowledged the similarities in his police report that ruled Wright out as a suspect. This was the same detective who conferred with Moser during Moser's interrogation of Wright. The Superior Court expressly found that Wright's attorney had no knowledge of the BVLS evidence. Wright's claim satisfies the second *Brady* factor of suppression of the evidence.

The third *Brady* factor is also met. To satisfy the third prong of a *Brady* analysis, there must be a " 'reasonable probability' that disclosure of the suppressed evidence would have led to a different result."[35] "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[36] After considering all the evidence, the Superior Court expressly so held. That finding was not an abuse of discretion on the facts of this case.

The similarities between the Hi–Way Inn and BVLS crimes support a determination that suppression of the BVLS evidence prejudiced Wright. The State contends the BVLS evidence would have been excluded under D.R.E. Rule 403, due to its tendency to confuse the jury.[37] But, the evidence that a similar crime was committed that evening by other perpetrators likely would have been admissible as reverse Rule 404(b) evidence, notwithstanding Rule 403.[38] For example, in *U.S. v. Stevens,* the Third Circuit reversed a conviction where the District Court had refused to admit evidence that a similar crime had been committed by someone other than the defendant on the same evening. There, both crimes "(1) took place within a few hundred yards of one another; (2) were armed robberies; (3) involved a handgun; (4) occurred between 9:30 p.m. and 10:30 p.m.; (5) were perpetrated on military personnel; and (6) involved a black assailant who was described similarly by his victims."[39] The Third Circuit held that this "reverse 404(b) evidence" should have been admissible and that Rule 403 would not bar its admission.[40] Similarly, in *Watkins v. State,* this Court reversed, under Rule 403, the exclusion of evidence relating to another robbery unusually similar when the defense was misidentification.[41]

The parallels between the two crimes here are similar to the parallels seen in

---

**34.** *Id.* at 438, 115 S.Ct. 1555.

**35.** *Id.* at 422, 115 S.Ct. 1555; see also *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

**36.** *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375.

**37.** D.R.E. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

**38.** D.R.E. Rule 404(b) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

**39.** *United States v. Stevens,* 935 F.2d 1380, 1401 (3d Cir.1991).

**40.** *Id.* at 1406.

**41.** *Watkins v. State,* 23 A.3d 151, 156 (Del. 2011).

*Stevens* and *Watkins.* The Superior Court also properly considered the lack of other evidence linking Wright to the Hi–Way Inn crime in finding a sufficient probability that the BVLS evidence undermined confidence in the outcome. In *Jackson v. State,* where this Court found a *Brady* violation but determined that it was not material, there was "overwhelming evidence [that] established Jackson's guilt." [42] This case is different. Here, a Superior Court Judge has questioned the credibility of Wright's confession—and that is a separate issue from its admissibility. Furthermore, there was no forensic evidence that placed Wright at the scene of the crime, and no eyewitnesses were able to identify Wright as the perpetrator—including Hummel.

The State also contends that because the police did not develop any further links between the two crimes, the BVLS evidence did not qualify as *Brady* material. The State argues that "the police neither saw nor developed any evidence that linked the BVLS attempted robbery to the Hi–Way Inn robbery and murder." In *Kyles v. Whitley,* the U.S. Supreme Court rejected this precise formulation as a test for *Brady* disclosure. The Supreme Court emphasized the prosecutor's duty to learn information obtained by police investigators for potential disclosure, and stated: "any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the

final arbiters of the government's obligation to ensure fair trials." [43]

The State claims that Wright suffered no prejudice from the suppression of the BVLS attempted robbery because it was mentioned in pre-trial newspaper articles discussing the Hi–Way Inn crime and Wright's arrest. The State argues that during the trial, the prosecutor repeatedly referenced the articles which contained reference to the BVLS robbery. If true, then there would have been no prejudice from the failure to disclose information already known by defense counsel.[44] Wright's trial counsel affirmatively stated in an affidavit that he was unaware of the BVLS robbery prior to or during the trial. Given this factual dispute over the knowledge of defense counsel that had not been addressed expressly by the Superior Court, we remanded the case to the Superior Court "for the sole purpose of determining whether the non-disclosure of the BVLS attempted robbery was immaterial because Wright's trial counsel had actual knowledge of the BVLS attempted robbery." [45]

The Superior Court has resolved the factual issue against the State and in favor of Wright. The court found that the articles referencing the BVLS robbery would have "provided notice to any reader, let alone an experience criminal lawyer, that there was a possible link between the Hi–Way Inn Murder and the events at BVLS." [46] The court also found that Wright's defense counsel was aware of the newspaper coverage. But the court made

**42.** *Jackson v. State,* 770 A.2d 506, 517 (Del. 2001).

**43.** *Kyles,* 514 U.S. at 438, 115 S.Ct. 1555.

**44.** See Andrew D. Leipold and Peter J. Henning, *Discovery by the Defendant—"Brady" Material,* 2 Fed. Prac. & Proc.Crim. § 256 (4th ed.).

**45.** *State v. Wright,* 2012 WL 4377841 (Del. Sept. 25, 2012) (ORDER).

**46.** *State v. Wright,* 2012 WL 5964029, at *3 (Del.Super., Nov. 28, 2012).

a crucial factual finding after an evidentiary hearing. The court found credible defense counsel's assertion that he was not aware of the specific references to BVLS.[47] The Superior Court accepted his testimony and cited to his repeated denials of having knowledge of the BVLS robbery, the fact that defense counsel would have exploited the evidence had he been aware of it and defense counsel's demeanor while on the witness stand. The Superior Court also found important evidence that the prosecuting attorney was not aware of the BVLS evidence at the time the Wright trial took place, and therefore the Court could not "agree . . . that [defense counsel] must have read the articles when [the] prosecutor apparently did not read them either."[48] These factual findings are entitled to deference by this Court for well-established reasons:

> In any appeal, the factual findings of a trial judge will not be set aside by a reviewing court unless those factual determinations are clearly erroneous. . . . When factual findings are based on determinations regarding the credibility of witnesses, however, the deference already required by the clearly erroneous standard of appellate review is enhanced. Only the trial judge can be aware of the variations in demeanor or voice inflections that are frequently dispositive influences upon the listener's understanding of and belief in what is said.[49]

In light of the evidence presented below and the Superior Court's credibility findings, it was not clearly erroneous for the Superior Court to find that Wright's counsel "was unaware of the exculpatory evidence stemming from the BVLS attempted robbery at the time of [Wright's] trial."[50] Given this factual finding, Wright was prejudiced by the State not disclosing the BVLS evidence. Had the disclosure been made, Wright's trial counsel could have argued that the same perpetrators of the BVLS robbery—a crime for which the police excluded Wright as a suspect—likely committed the Hi–Way Inn murder as well. The jury never heard this exculpatory argument because of the *Brady* violation which occurred. A capital murder defendant is not entitled to a perfect trial, but he is entitled to a fair one consistent with due process and the State's duty to disclose exculpatory evidence.

I respectfully dissent.

---

**47.** *Id.* at *3–4.

**48.** *Id.* at *4.

**49.** *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 491 (Del.2000) (citing *Anderson v. City of* *Bessemer City, North Carolina*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

**50.** *Wright*, 2012 WL 5964029 at *4.