IN THE SUPREME COURT OF THE STATE OF DELAWARE

DONALD COLE,

    Defendant-Below,
    Appellant,

    v.

STATE OF DELAWARE,

    Plaintiff-Below,
    Appellee.

§
§   No. 353, 2017
§
§   Court Below: Superior Court
§   of the State of Delaware
§
§   Cr. ID. Nos. 0110006694A
§           0309013358
§
§
§
§

Submitted: February 14, 2018
Decided:  February 28, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## **ORDER**

This 28th day of February 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    Donald Cole and Larry Johnson were charged with shooting and injuring two residents while burglarizing a home on Lancaster Avenue in Wilmington. Nine days later, Cole, Johnson, and Travanian Norton were accused of shooting and killing two residents while burglarizing a home on 23rd Street in Wilmington. The same guns were used in both burglaries.

(2)    The State charged Cole for the Lancaster Avenue burglary along with Elwood Hunter. Cole knew Hunter was not involved in the burglary and wanted to

give a statement to exonerate him. Cole's counsel advised him not to and warned that if he did so, the State would likely charge him for the 23rd Street murders and seek the death penalty. Cole nonetheless insisted on giving the statement, and the parties negotiated a plea agreement. The parties disagree, however, on exactly what the State promised Cole in exchange for the statement.

(3) According to the State, they agreed that if Cole pleaded guilty and gave a statement providing information about both the Lancaster Avenue and 23rd Street burglaries, they would "consider" waiving the death penalty for the 23rd Street charges. They would not waive the death penalty, however, "until they knew the content and substance of Cole's statement."[1] According to Cole, he "believed that, in exchange for [his] truthful statement, the State would not seek the death penalty."[2] In addition, Cole believed the statement would be used only for "review and consideration of the death penalty," and not "for any other purpose."[3] The agreement was not reduced to writing.

(4) On January 14, 2003, Cole gave the statement. At the beginning of the recording, the attorney for the State specified, "we are going to take [a] proper statement of what you have to say about anything we ask you about and I'm going

---

[1] Opening Br. at 6.
[2] *Id.*
[3] *Id.* at 6–7.

to take that statement back to my superiors and discuss with them whether to make you an offer where you would be spared capital punishment."[4]  The State said nothing about using the statement for any other purpose.  In his statement, Cole exonerated Hunter and admitted his involvement in both the Lancaster Avenue and the 23rd Street burglaries.  He stated that Norton was an accomplice in the 23rd Street burglary and that Johnson was an accomplice in both.  Cole then pleaded guilty to the charges of attempted first degree murder, first degree assault, and two counts of possession of a firearm by a person prohibited for the Lancaster Avenue burglary and shooting.

(5)  Following the Lancaster Avenue plea, the State charged Cole with the 23rd Street murders and sought the death penalty.  Cole filed a motion to prevent the State from seeking the death penalty, arguing it had agreed to waive it in exchange for his statement.  The court denied Cole's motion, finding "[t]he transcript contain[ed] no promises about benefit to Cole as a result of the proffer, other than [the State's] willingness to consider the information and review [Cole's] request again with the senior staff."[5]

(6)  The State also questioned Norton about his involvement in the 23rd Street burglary and played him a part of Cole's recorded statement.  After hearing

---

[4] App. to Answering Br. at 28 (Cole Statement, *State v. Cole*, No. 30-01-87104, at 1 (Jan. 14, 2003)).
[5] *Cole v. State*, 922 A.2d 364, 367 (Del. 2007).

3

that Cole implicated him, Norton agreed to give a statement and testify against Cole in exchange for a favorable plea deal. Cole filed a motion to suppress all evidence derived from his statement, including Norton's statement and testimony, arguing that the State did not reveal it was going to use the statement for any purpose other than possible waiver of the death penalty. The court denied that motion as well, finding the State had only agreed not to use the audiotape at trial.[6] The court allowed Norton to testify.

(7)     Also prior to trial, an inmate, Gary Lloyd, came forward and said his cellmate confessed to committing the burglary. Cole's counsel did not investigate Lloyd or his cellmate.[7] According to Cole, his counsel only communicated with him five times outside of court proceedings.[8] At trial, Norton was the only witness to implicate Cole. In his statement, Norton said that he saw Cole climb into a window from the roof, but was not sure how Cole got onto the roof.[9] At trial, however,

---

[6] *Cole v. State*, 2006 WL 1134222, at *5 (Del. Super. Mar. 14, 2006), *aff'd*, 922 A.2d 364. This use was already prohibited by Delaware Rule of Evidence 410. *See* D.R.E. 410 ("Except as otherwise provided in this rule, evidence of a plea of guilty later withdrawn with court permission, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.").

[7] At a postconviction evidentiary hearing, Lloyd also denied making the statement, stating his cellmate "said he didn't do it, that's it." App. to Opening Br. at 398–99 (Evid. Hr'g, *State v. Cole*, No. 0309013358, at 17–20 (Del. Super. June 29, 2015) (TRANSCRIPT)).

[8] Opening Br. at 20.

[9] App. to Opening Br. at 488 (Norton Statement, No. 01-87104, at 49 (July 30, 2003) (TRANSCRIPT)).

4

Norton testified that he saw Cole climb onto an open trash can and saw Johnson push Cole up onto the roof.[10] Norton also testified that once inside, he saw Cole shoot one victim, and saw Cole and Johnson both shoot the other.[11] The defense attorney never visited the crime scene, but did cross-examine a state witness about the area, including the lighting and the characteristics of the roof.[12] On July 31, 2004, the jury convicted Cole of four counts of first degree murder, first degree burglary, second degree conspiracy, and five counts of possession of a firearm by a person prohibited. The jury did not impose the death penalty, and the court sentenced Cole to life in prison.

(8) Cole appealed the 23rd Street conviction, arguing the court erred in denying his motion to suppress the statement and evidence derived from it.[13] On October 20, 2005, this Court remanded the case but retained jurisdiction, requiring the Superior Court to make explicit factual findings regarding the proffer.[14] The

---

[10] *Id.* at 43, 59 (Trial Tr., *State v. Cole*, No. 0309013358, at 20, 82–84 (Del. Super. July 21, 2004) (TRANSCRIPT)).

[11] *Id.* at 45–47 (Trial Tr., at 26–34).

[12] Opening Br. Ex. A (Mem. Op., *State v. Cole*, Nos. 0110006694A, 0309013358, at 35–41 (Del. Super. Aug. 1, 2017)).

[13] Appellant's Opening Br., *Cole v. State*, 922 A.2d 354, 2005 WL 1923062 (Del. Super. June 17, 2005)). As for the Lancaster Avenue case, Cole filed a *pro se* motion for postconviction relief on February 10, 2006, which the Superior Court denied on August 20, 2007. On May 29, 2008, this Court remanded to allow Cole to be represented by an attorney, and on October 22, 2010, Cole filed an amended motion for postconviction relief. On September 21, 2012, the Superior Court Commissioner denied Cole's motion for postconviction relief, which Cole appealed on October 5, 2012. The Superior Court affirmed the Commissioner's decision on August 1, 2017.

[14] *Cole v. State*, 922 A.2d 354 (Del. 2005).

court made the factual findings on March 14, 2006,[15] and this Court affirmed Cole's convictions on March 12, 2007.[16] On July 17, 2007, Cole filed a *pro se* motion for postconviction relief, alleging ineffective counsel and insufficient evidence, which the Superior Court denied on December 7, 2007.[17] This Court affirmed on April 30, 2008.[18] Next, Cole filed a petition for a writ of habeas corpus in federal court, which was stayed at Cole's request so he could file an amended motion for postconviction relief in the Delaware Superior Court. He filed the motion on October 22, 2010, alleging sixteen counts of ineffective counsel. On September 21, 2012, the Superior Court Commissioner denied Cole's amended motion,[19] which Cole appealed. On August 1, 2017, the Superior Court affirmed the Commissioner's denial after holding three days of evidentiary hearings and allowing Cole to appoint an investigator and ballistics expert.

(9) On appeal, Cole argues the court abused its discretion in denying his claim that his counsel were ineffective in negotiating and enforcing his plea deal and in failing to communicate with him, to investigate a witness, and to investigate the

---

[15] *Cole*, 2006 WL 1134222.
[16] *Cole*, 922 A.2d 364.
[17] App. to Opening Br. at 20.
[18] *Cole v. State*, 947 A.2d 1120, 2008 WL 1887292 (Del. Apr. 30, 2008) (TABLE).
[19] App. to Opening Br. at 229 (Comm'r's R. & R., *State v. Cole*, No. 0309013358 (Del. Super. Sept. 21, 2012)).

crime scene. This Court reviews the denial of a motion for postconviction relief for an abuse of discretion.[20] Questions of law are reviewed *de novo*.[21]

(10) Cole first claims that the court abused its discretion in dismissing "wholesale" his claim that his counsel were ineffective in the negotiation, enforcement, and appeal of his plea deal, specifically because they failed to put the agreement in writing. We first address the procedural bars in Rule 61(i) of the Superior Court Rules of Criminal Procedure.[22] A motion for postconviction relief is barred by Rule 61(i)(1) if filed more than one year after final conviction; by Rule 61(i)(2) if not asserted in a prior postconviction motion; by Rule 61(i)(3) if procedurally defaulted; and by Rule 61(i)(4) if formerly adjudicated.[23] A claim not formerly raised or adjudicated may be reconsidered "in the interest of justice."[24] In addition, Rule 61(i)(5) provides an exception to the first three procedural bars if the movant shows "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[25] The

---

[20] *Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010).

[21] *Lewis v. State*, 945 A.2d 1167, 2008 WL 880172, at *1 (Del. 2008) (TABLE).

[22] Super. Ct. Crim. R. 61(i). We apply the version of Rule 61 in effect at the time the motion is filed. *Bradley v. State*, 135 A.3d 748, 757 (Del. 2016). Taylor filed this motion for postconviction relief in 2010, at which time the 2005 version of Rule 61 was in effect.

[23] Super. Ct. Crim. R. 61(i)(1)–(4).

[24] *Id.* 61(i)(2), (4).

[25] *Id.* 61(i)(5). Whether allegations in a Rule 61 motion present a "colorable claim" under Rule 61(i)(5) is a question of law. *Lewis*, 2008 WL 880172, at *1. The court is "not obliged to opine

Rule 61(i)(5) "exception is narrow and only applies when the movant can present some credible evidence that he has been denied a substantial constitutional right."[26] The standard may be met if the movant pleads a "meritorious ineffective assistance of counsel claim that demonstrates a constitutional violation."[27]

(11)   The Superior Court found Cole's claim that his counsel were ineffective in negotiating the plea agreement was barred by Rule 61(i)(1) because it was not filed within one year of conviction, and by Rule 61(i)(2) because it was not raised in his first motion for postconviction relief.[28]   The court also found this claim was barred by Rule 61(i)(4) as formerly adjudicated, because it was "premised in one fashion or another on the contention that his counsel was ineffective during (a) his plea negotiations . . . and (b) in their efforts to exclude evidence . . . derived from the alleged misuse of Cole's proffer."[29]   Therefore, the court concluded, the claim

---

on the probability of success on these claims, but merely to ascertain whether, based on the allegations, a colorable claim or claims exist." *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1478537, at *2 (Del. Ch. Oct. 2, 2000).   While a colorable claim does not "necessarily require a conclusive showing of trial error, mere 'speculation' that a different result might have [been] obtained certainly does not satisfy the requirement." *State v. Trump*, 2004 WL 2827958, at *2 (Del. Super. Aug. 31, 2004), *aff'd*, 870 A.2d 1192, 2005 WL 583749 (Del. Mar. 9, 2005) (TABLE); *see also State v. Poon*, 2010 WL 703052, at *1 (Del. Super. Feb. 26, 2010).

[26] *State v. Ducote*, 2011 WL 7063381, at *1 (Del. Super. Dec. 29, 2011) (citing *Younger v. State*, 580 A.2d 552, 555 (Del. 1990)).

[27] *State v. Flowers*, 150 A.3d 276, 282 (Del. 2016).   To plead a meritorious ineffective assistance of counsel claim, the movant must show that counsel's representation fell below an objective standard of reasonableness, resulting in prejudice to the defense.   *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

[28] Opening Br. Ex. A. (Op. at 15–16).  Cole's conviction was final in 2007, and he filed this motion for postconviction relief in 2010.

[29] *Id.* (Op. at 42–43).

8

was addressed when this Court rejected Cole's argument that the statement should have been suppressed, and thus was procedurally barred.[30]

(12) The Superior Court relied on *State v. Wright*, in which this Court reversed the Superior Court's decision and held that the court could not on its own reconsider the defendant's Miranda warnings, because "the admissibility of Wright's confession has been challenged and upheld repeatedly."[31] The Court held that "a defendant is not entitled to have a court re-examine an issue that has been previously resolved 'simply because the claim is refined or restated.'"[32] In the instant case, the Superior Court held that Cole's claim of ineffective assistance in negotiating the plea merely "refined or restated" his claim that the motion should have been suppressed, and thus found it procedurally barred.[33]

(13) On appeal, Cole argues the court abused its discretion because this *specific* claim was not formerly adjudicated. Cole explains that he was "not rearguing the suppression of evidence" in this motion, but rather was alleging "constitutional deficiencies" in his counsel's negotiation and enforcement of the

---

[30] *Cole*, 2006 WL 1134222.
[31] 67 A.3d 319, 323 (Del. 2013), *as amended* (May 28, 2013). The Miranda warnings had already been found effective on a motion to suppress at trial, on direct appeal, on a motion for postconviction relief, and on that motion's appeal. *Id.*
[32] *Id.* (citations omitted).
[33] Opening Br. Ex. A (Op. at 43–44).

agreement.[34]  Cole argues the Court should apply *Lacombe v. State*,[35] in which this Court found an ineffective counsel claim was not barred under Rule 61(i)(4).[36]  In *Lacombe*, the Superior Court previously adjudicated and decided that the defendant's sentence was not disproportionate.[37]  In the postconviction motion, however, the movant claimed that his counsel were ineffective for failing to present a case comparison when arguing that the sentence was disproportionate.[38]  This Court explained that the defendant "alleged a specific deficiency in Appellate Counsel's performance that was not raised on direct appeal."[39]  The Court thus concluded that the ineffective assistance claim was legally distinct and not barred as formerly adjudicated under Rule 61(i)(4).[40]

(14)  Cole's situation is more similar to the situation in *Lacombe* than that in *Wright*.  In *Wright*, the court addressed the exact issue that was already addressed below—whether the Miranda warnings were effective.  However, in *Lacombe*, the court found the two issues—whether the sentence was disproportionate and whether his counsel were ineffective in arguing it—were distinct.  In the instant case, the

---

[34] *Id.* at 14.

[35] 163 A.3d 708, 2017 WL 2180545, at *3 (Del. May 17, 2017) (TABLE).

[36] Opening Br. at 15–16.

[37] 2017 WL 2180545, at *3.

[38] *Id.*

[39] *Id.* ("[T]he argument itself is not that the sentence is disproportionate.  Rather, the claim here is that Appellate Counsel was ineffective for citing only one case from another jurisdiction.").

[40] *Id.*

issues—whether the statement should have been suppressed and whether his counsel were ineffective in negotiating the plea—are also distinct. Thus, Cole's claim was not formerly adjudicated and is not barred by 61(i)(4).[41]

(15) The claim is still procedurally barred, however, by Rules 61(i)(1) and (2), and thus Cole can only proceed if he can overcome these bars by meeting the requirements of Rule 61(i)(5). To do so, he must state a colorable constitutional claim that his counsel were ineffective.[42] A "colorable" claim is one that establishes a reasonable probability of prejudicial error.[43] In *Lacombe*, this Court found that because the Superior Court already determined the sentence was not disproportionate, "[c]ounsel's failure to provide a survey of comparable cases had no impact on the direct appeal."[44] Similarly, here, the court made thorough factual findings about what the parties agreed to at the time Cole gave a statement.[45] The

---

[41] *Cf. Barrow v. State*, 913 A.2d 569 (Del. 2006) (holding the claim that counsel were ineffective for failing to timely file a motion to suppress was barred by Rule 61(i)(4) because the court already found that admitting the statement did not prejudice the defendant).

[42] *State v. Mayfield*, 2003 WL 21267422, at *3 (Del. Super. June 2, 2003) (quoting *State v. Getz*, 1994 WL 465543 (Del. Super. July 15, 1994), *aff'd*, 651 A.2d 787 (Del. 1994)).

[43] *See*, *e.g.*, *Getz*, 1994 WL 465543, at *11.

[44] *Lacombe*, 2017 WL 2180545, at *4.

[45] *Cole*, 2006 WL 1134222, at *1 ("Cole and Miller agreed before the proffer that the proffer would be used in two ways. First, they implicitly agreed that the statement would be used to determine whether the State would dismiss the charges against Hunter who was likely to be wrongly convicted. . . . Second, Cole and Miller explicitly agreed that the State would use the statement to evaluate the propriety of waiving the death penalty in connection with the prosecution of the 23rd Street double murders."); *id.* at *5 ("When Cole gave the statement, he knew of the ballistics link between Lancaster Avenue and 23rd Street, and he knew that by giving the statement he 'would likely be convicted.'"); *id.* ("Little is certain in this case, but the fact that [Cole's defense counsel]

court found Cole's statement was admissible, and this Court affirmed, even though his counsel did not put the plea in writing.[46] Thus, even if Cole's counsel were ineffective, Cole cannot establish a reasonable probability that the result would have been different had the agreement been in writing.[47] Thus, Cole does not meet the exception of Rule 61(i)(5), and therefore his claim remains procedurally barred by Rules 61(i)(1) and (2).

(16) Cole next claims the Superior Court abused its discretion by denying his claim that his counsel were ineffective for failing to communicate with him, failing to investigate the crime scene, and failing to investigate a witness. The court found Cole's claims were barred by Rule 61(i)(1) as untimely and Rule 61(i)(2) as not raised in his previous motion. Thus, the court analyzed whether Cole could overcome these bars by alleging a colorable claim of ineffective counsel under Rule 61(i)(5).[48]

---

counseled against the proffer has never been disputed."); *id.* ("I conclude that the agreement before and after the proffer was that the only limitation on the use of the statement was D.R.E. 410.").

[46] *Cole*, 922 A.2d at 373 ("We are compelled to stress that the parties easily could have avoided the confusion caused by the resulting misunderstanding by putting their agreement in writing or on the record *before* the proffer."); *Cole*, 2006 WL 1134222, at *5 ("The voluntary nature of the statement, given against advice of counsel, the corroboration requirement; the explanation of Miller; the post-statement arrival of the 'investigative purposes' limitation; Cole's affidavit where he says that he knew the State would check out the statement, and that he would be convicted of the 23rd Street murders; lead me to conclude that the limitation on the use now asserted was not contemplated at the time the proffer was taken.").

[47] *Strickland*, 466 U.S. at 687–88.

[48] The court requested argument on whether asserting a violation of Sixth Amendment rights alone was enough to satisfy 61(i)(5) and overcome the procedural bars. The court concluded that merely invoking the Sixth Amendment did not satisfy Rule 61(i)(5). Rather, the movant must allege

(17) First, the court found that Cole's claim that his counsel were ineffective for failing to communicate with him did not state a colorable claim under Rule 61(i)(5), because he could not establish prejudice. On appeal, Cole's only assertion of prejudice is that his counsel's failure to communicate "put him at a significant disadvantage as he was completely unaware of what was happening with his case and how to help his attorneys."[49] In his postconviction motion, his claims of prejudice rely on the assertions that his counsel failed to discuss strategies with him and that he could have provided his counsel with information about the area the crime took place and about Travanian Norton's credibility. But, "[a] defendant must make specific allegations of actual prejudice and substantiate them."[50] Cole cannot establish that the strategies or information he could have provided would have resulted in a different outcome. Thus, his allegations are insufficient to establish actual prejudice,[51] and his claim remains procedurally barred by Rules 61(i)(1) and (2).

(18) Next, the Superior Court held Cole's allegation that his counsel were ineffective for failing to investigate the crime scene stated a colorable claim. The court found that his "trial counsel's failure to visit the scene was less tha[n] what a

---

"sufficient facts to make out a facially sufficient Sixth Amendment claim." Opening Br. Ex. A (Op. at 2).
[49] *Id.* at 21.
[50] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[51] *See Getz*, 1994 WL 465543, at *11.

13

reasonable attorney would do."[52]  In addition, the court found Cole sufficiently alleged "specific facts which, if true, would show that the witness's testimony [that] he saw Cole enter the victims' home through a second floor window was false."[53] Thus, Cole met the requirements of Rule 61(i)(5) by showing a colorable constitutional violation.  The court considered the claim on the merits but rejected it, finding Cole could not establish prejudice.

(19)  On appeal, Cole alleges that he was prejudiced because had his counsel visited the crime scene, they would have discovered that the lighting was poor, that Norton's view was blocked by a tall fence, and that Cole could not have climbed onto the roof.  However, as the Superior Court noted, Cole's counsel thoroughly cross-examined a state witness about the lighting at the scene, there was a low fence Norton easily could have seen over, and Cole's counsel told the jury that climbing onto the roof was "very difficult" if not "impossible."[54]  They also effectively cross-examined a police witness about the difficulty of climbing onto the roof.[55]  Thus, the Superior Court properly found that Cole had not demonstrated that there was a reasonable probability that the result would have been different had his counsel visited the crime scene.

---

[52] Opening Br. Ex. A (Op. at 35).
[53] *Id.* (Op. at 21).
[54] *Id.* (Op. at 33).
[55] *Id.* (Op. at 35–41).

14

(20) Lastly, Cole argues his counsel were ineffective for failing to investigate witness Gary Lloyd, who told the police that his cellmate had confessed to the crime. The Superior court found this claim failed to meet the requirements of Rule 61(i)(5). Trial counsel does not have to interview every possible witness; "[i]nstead, counsel is simply required to exercise reasonable professional judgment in deciding whether to interview a witness."[56] As the Superior Court noted, Cole admitted to the crime, and thus his counsel knew the alleged confession was false and were not ineffective for declining to investigate Lloyd.[57]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[56] *State v. Jackson*, 2014 WL 4407844, at *7 (Del. Super. Sept. 3, 2014), *aff'd*, 124 A.3d 1015 (Del. 2015) (quoting *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990)).

[57] Opening Br. at Ex. A. (Op. at 90–91); *see also* Del. R. Prof. C. 3.3(A)(3) ("A lawyer shall not knowingly: . . . (3) offer evidence that the lawyer knows to be false."); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").

15