Mark J. MANNA, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 272, 2007.

Supreme Court of Delaware.

Submitted: Dec. 4, 2007.
Decided: Feb. 29, 2008.

John S. Malik, Esquire, Wilmington, Delaware, for appellant.

James T. Wakley, Esquire, of the Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, and RIDGELY, Justices.

RIDGELY, Justice.

Defendant–Appellant Mark J. Manna appeals his convictions, following a Superior Court jury trial, of Robbery First Degree, Wearing a Disguise During the Commission of a Felony, and Conspiracy Second Degree. In his appeal, Manna argues that the Superior Court abused its discretion in refusing to allow him to present any character witnesses who would have testified that Manna had a reputation for being an honest and truthful person. He also argues that the Superior Court erred in denying a missing evidence instruction.

Evidence of a pertinent trait of character offered by an accused to show his propensity to act in conformity therewith is controlled by D.R.E. 404. The trial judge acknowledged D.R.E. 404(a)(1),[1] which allows the accused to offer evidence of a pertinent character trait, but found the proffered testimony inadmissible under D.R.E. 608(a)(2)[2] because the defendant's character for truthfulness was not attacked by the prosecution. The trial judge also determined that, even if admissible pursuant to D.R.E. 404(a), the proffered character evidence was inadmissible under D.R.E. 403 because the "only point to be served by introduction of the evidence in question was to evoke sympathy for the Defendant."

We reaffirm that evidence of a pertinent trait of character offered by an accused is admissible under D.R.E. 404(a)(1), and "if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt."[3] We hold that the Superior Court erred as a matter of law in applying D.R.E. 608 to determine the admissibility of the character evidence offered by the accused for the purpose of proving the defendant acted in conformity with his character. Although reasonable limits may be placed upon the number of character witnesses, the Superior Court's exclusion of all character evidence in this case

---

**1.** D.R.E. 404(a) provides:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution; (2) Character of alleged victim. Except as otherwise provided by statute, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; (3) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

**2.** D.R.E. 608(a) provides:

Except as provided in 11 *Del. C.* §§ 3508 and 3509, the credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) The evidence may refer only to character for truthfulness or untruthfulness, and (2) *evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.* (emphasis added).

**3.** 11 *Del. C.* § 302.

pursuant to D.R.E. 403 was an abuse of discretion. Accordingly, we reverse and remand for a new trial.

## I.

Shortly before 4:00 a.m. on April 6, 2006, three men entered a 7–11 convenience store in New Castle, Delaware. Each of the three men wore t-shirts wrapped around their faces and two of the men were armed. One of the men, later identified as Michael Cosme, pointed an assault rifle at the store clerk, Ram Rakha, and demanded money. The second man, Jordan Weister, was armed with a fake handgun and struck Rakha in the face. The third man, who was unarmed, took the money out of the cash register. After the robbery, the men fled with cash, cigarettes, and cigars in a Jeep Grand Cherokee. The robbery was captured on the store's surveillance camera and was videotaped.

When Trooper Gregory Rash of the Delaware State Police arrived, he took Mr. Rakha's statement and the surveillance tape.[4] According to the police report, Mr. Rakha told the officer that a black male had the assault rifle and a white male struck him with a handgun. The report also describes the robbers as two black males and one white male. In reviewing the video, the officer could only positively identify the race of one robber (white), but could not identify the race of the other two.

Detective Ronald Kline later spoke to a confidential informant who provided him with details about the robbery that had been undisclosed to the public. The informant identified two of the suspects in the robbery, Weister and Cosme. The informant also advised the detective that Weis-

ter had entered the store before the robbery to make a purchase with a credit card.[5] Detective Kline verified with the store owner that a person had used a credit card to purchase items a few minutes before the robbery. A review of the surveillance tape showed that one of the robbers had on clothes similar to that person.

The police obtained and executed a search warrant of Weister's residence and found a nine-millimeter assault rifle in Weister's bedroom. A search of Weister's mother's Jeep Grand Cherokee found cigars, cigarettes, a red t-shirt, some bottles and ammunition. Weister's mother also verified the number on her credit card as matching the one used in the store before the robbery. The police arrested Weister.

Through his attorney, Weister told Detective Kline that his co-conspirators were Cosme and Manna. Based on that information, the detective contacted Manna and arranged to meet with him. According to Detective Kline, Manna admitted to participating in the robbery during their conversation. Detective Kline explained at trial that Manna agreed that he would voluntarily turn himself in the day after his high school graduation. When he did not do so, the detective arrested him pursuant to a warrant.

Weister entered guilty pleas to Robbery in the Second Degree, Conspiracy Second Degree, and Possession of a Deadly Weapon During the Commission of a Felony in exchange for other charges being dropped and a sentencing recommendation of two years in jail. As part of his plea agreement with the State, Weister agreed to testify truthfully as a prosecution witness in Manna's trial.[6] Weister explained at

4. He was unsuccessful in recovering any fingerprints of value from the scene.

5. This incident was captured on the surveillance tape and Weister admitted to making the purchase with his mother's credit card.

6. The record is unclear whether the jury was

that trial the details of the robbery, including Manna's involvement. Detective Kline also testified that Manna had admitted to him that he had been involved.

For the defense, Manna's father countered that Manna had come home between 1:00 a.m. and 1:30 a.m. the night of the robbery and that he would have heard him if he had left his room. Manna also testified that he was at the party, but that he had left around 12:30 a.m. He acknowledged that he would call Weister and Cosme on most weekends to "see what was going on" and that all three had "hung out" at the party. He admitted that he knew of the details of the crime, but only because he sat with Weister and other mutual friends at the same lunch table. Manna also confirmed that he met with Detective Kline, but denied admitting to the robbery or agreeing to turn himself in after his high school graduation.

Manna sought to call four character witnesses on his behalf: a friend of his family, his aunt, his youth minister, and his lacrosse coach. Defense counsel proffered that each of these character witnesses would testify that Manna had a reputation for being honest and truthful. The State objected on the basis that Manna's character for truthfulness had not been attacked and the proffered testimony was not pertinent to the case. The trial judge recognized that it was a "close question," but determined that the proffered testimony

would have had a danger of confusing or misleading the jury under D.R.E. 403. He also found that the evidence was not relevant under D.R.E. 401, 404, 405, and 608 because the State had not attacked Manna's reputation for truthfulness during its cross examination of him. The trial judge sustained the State's objection and precluded Manna from calling any character witnesses in his defense.

The jury convicted Manna of Robbery First Degree, Wearing a Disguise During the Commission of a Felony, and Conspiracy Second Degree. Manna was found not guilty of Possession of a Firearm During the Commission of a Felony. The Superior Court sentenced Manna to three years of mandatory incarceration followed by decreasing levels of probation. This appeal followed.

## II.

 Manna first argues that the trial judge erred as a matter of law by preventing him from presenting any character witnesses on his behalf. A trial judge's evidentiary rulings will not be set aside by this Court absent an abuse of discretion.[7] Likewise, we review a trial judge's decision on the relevancy of proffered testimony for abuse of discretion.[8] If we determine that the Superior Court abused its discretion, we then determine whether the error rises to the level of significant prejudice which would act to deny the defendant a fair trial.[9]

properly instructed or cautioned about the limited use of Weister's plea agreement and the accompanying testimony about it. *See Allen v. State*, 878 A.2d 447, 450–451 (Del. 2005) (explaining the limited circumstances where a plea agreement can be admitted into evidence, the extent to which a jury may consider it, and how the jury should be instructed).

**7.** *Pope v. State*, 632 A.2d 73, 78–79 (Del.1993); *see also Hicks v. State*, 913 A.2d 1189, 1196 (Del.2006) ("This Court reviews a trial court decision to admit (or not to exclude) evidence

under D.R.E. 404(a)(2) and 404(b) for abuse of discretion."); *accord Page v. State*, 934 A.2d 891, 899 (Del.2007) ("We review the trial judge's evidentiary rulings for an abuse of discretion."); *Smith v. State*, 913 A.2d 1197, 1228 (Del.2006) (same); *Seward v. State*, 723 A.2d 365, 372 (Del.1999) (same).

**8.** *Rodriguez v. State*, 1994 WL 276988, at *4 (Del.Supr.); *accord Lampkins v. State*, 465 A.2d 785, 790 (1983).

**9.** *Seward*, 723 A.2d at 372.

Professor Wigmore has explained that at common law, "a defendant may offer his good character to evidence the improbability of his doing the act charged, unless there is some collateral reason for exclusion; and the law recognizes none such."[10] Over a century ago, this Court sided with what it determined was the "overwhelming weight of authority" that a defendant may offer character evidence in his defense:

[P]roof of an unblemished character may, under all the facts and circumstances of the particular case, create a doubt in the minds of the jury, when without it they would have no doubt; and that it is, at least, a circumstance in every case, when proved, to be weighed and estimated by the jury according to the weight of the testimony by which it is supported in connection with that to which it is opposed.[11]

Likewise, the United States Supreme Court has stated:

[A defendant] may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged. This privilege is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed.[12]

These common law principles were eventually incorporated in a more narrow form into the Federal Rules of Evidence.[13]

■ Like the Federal Rules of Evidence,[14] D.R.E. 404(a)(1) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, *except ... [e]vidence of a pertinent trait of character offered by an accused ....*"[15] This rule reinforces the common law right

10. 1A WIGMORE ON EVIDENCE § 56 (Tillers rev. 1983). Wigmore notes that prior to the 1800s, there were two "well-understood" limitations (character could only be invoked in capital cases and character was receivable in doubtful cases only), which have since been abandoned. *Id.*

11. *Daniels v. State*, 48 A. 196, 200 (Del.1901).

12. *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

13. At common law, general good character was admissible to disprove intent. *See* WIGMORE § 56 ("[S]o far as in criminal cases the criminal intent remains in issue, the good character of the defendant may be regarded as always relevant to disprove it, and the better way seems to admit it."). Evidence of general good character, however, is no longer admissible under the Federal Rules of Evidence. Rule 404(a) of the Federal Rules of Evidence limit the admission of character evidence to "pertinent traits" of character. *See* FED.R.EVID. 404(a) advisory committee notes ("The limitation to pertinent traits of charac-

ter, rather than character generally, in paragraphs (1) and (2) is in accordance with the prevailing view.... A similar provision in Rule 608, to which reference is made in paragraph (3), limits character evidence respecting witnesses to the trait of truthfulness or untruthfulness.") (citation omitted).

14. "The Delaware Uniform Rules of Evidence are modeled upon the Federal Rules of Evidence." *Atkins v. State*, 523 A.2d 539, 542 (Del.1987). The Federal Rules Advisory Committee notes are "instructive" and provide guidance. *Id.; see also Ricketts v. State*, 488 A.2d 856, 857 n. 2 (Del.1985) ("The Delaware Study Committee, which drafted the D.R.E., has stated that the historical materials surrounding the promulgation of the Federal Rules and the F.R.E. official notes and comments, 'should be considered as being part of the comments prepared by the Delaware Study Committee and a court should refer to these materials in construing these rules.'") (quoting D.R.E., Delaware Study Committee Prefatory Note).

15. D.R.E. 404(a)(1) (emphasis added).

of a defendant to call character witnesses on his behalf.[16]

■ Under D.R.E. 404(a)(1), the accused may introduce evidence of a *pertinent trait* of his character to show circumstantially that it is unlikely that he committed the particular offense charged. When this rule is read together with the Delaware Criminal Code, credible evidence of a pertinent character trait, if believed by the jury, may raise a reasonable doubt as to a defendant's guilt.[17]

■ In this case, dishonest conduct is charged. "[R]obbery, burglary and theft ... have been determined by this Court to be crimes involving dishonest conduct."[18] This Court has defined the term "dishonesty" as "the act or practice of lying, deceiving, cheating, stealing or defrauding."[19] Here, one of the charges the State brought against Manna was robbery, which requires proof of theft, a dishonest act. To aid his defense, Manna was entitled to introduce evidence of pertinent character traits relevant to the offense charged, specifically honesty and truthfulness, under D.R.E. 404(a)(1).[20]

■ Notwithstanding D.R.E. 404(a)(1), the trial judge precluded the proffered character evidence under D.R.E. 608(a)(2) because Manna's character for truthfulness had not been attacked. Neither the common law nor D.R.E. 404(a)(1) imposes this limitation.

■ D.R.E. 607, 608, and 609 govern the use of impeachment evidence of witnesses. D.R.E. 607 establishes the right to impeach, and D.R.E. 608 and 609 establish the framework for doing so,[21] with certain exceptions.[22] For example, the

---

**16.** The ability to "open the door to proof of certain character traits as circumstantial evidence of whether he committed the act charged with the requisite state of mind," however, is not without its limitations or consequences. *See* McCormick on Evidence Hornbook Series Lawyer's Edition § 191 at 568 (Edward W. Cleary, ed., 3d ed.1984). *See also Michelson*, 335 U.S. at 479, 69 S.Ct. 213 ("Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.").

**17.** *See* 11 *Del. C.* § 303(c) ("If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find that the evidence raises a reasonable doubt as to the defendant's guilt.").

**18.** *Tucker v. State*, 1996 WL 539802, at *2 (Del.Supr.); *see also Paskins v. State*, 1995 WL 120665, at *2 (Del.Supr.) ("The *actus reas* of robbery consists of the commission of a theft and the use, or threatening the immediate use, of force. 11 *Del. C.* § 831. Here, defendant acted in a dishonest manner by stealing money from the four men. Defendant's conduct falls under the act of stealing

from another."); *accord Tinnen v. State*, 1987 WL 36361, at *1 (Del.Supr.) ("The crime of receiving stolen property involves dishonesty."). *But see Gregory v. State*, 616 A.2d 1198, 1204 (Del.1992) (finding that drug convictions do not involve dishonesty and false statements within D.R.E. 609(a)).

**19.** *Gregory*, 616 A.2d at 1204; *accord Morris v. State*, 795 A.2d 653, 665 (Del.2002); *Tinnen*, 1987 WL 36361, at *1.

**20.** Some states have found that the term "honesty" is a broader term than "truthfulness." *See, e.g., Wiggins v. Texas*, 778 S.W.2d 877, 889–90 (Tex.Ct.App.1989); *Nebraska v. Vogel*, 247 Neb. 209, 526 N.W.2d 80, 85 (1995). The Rhode Island Supreme Court has found that "the distinction between the word 'truthful' and the word 'honest' is so subtle as to be imperceptible." *Rhode Island v. Stewart*, 712 A.2d 362, 364 (R.I.1998). We find that the distinction "is so subtle as to be imperceptible." *Id.*

**21.** *See Weber v. State*, 457 A.2d 674, 680 (Del. 1983).

**22.** *Baumann v. State*, 891 A.2d 146, 148 (Del. 2005) ("When impeachment evidence is offered to show bias, competency, or contradiction, the admissibility of that evidence is controlled by DRE 402 and 403.").

limitation in D.R.E. 608(b) "is designed to avoid 'mini-trials' into the 'bad acts' of a witness which would require the use of extrinsic evidence to prove such acts."[23] Here, the trial judge found that D.R.E. 608(a)(2) operated to prohibit the defendant from introducing character evidence under D.R.E. 404(a)(1). This interpretation runs counter to the Federal Advisory Committee notes on Rule 608(a), which state that Rule 608(a) operates to develop Rule 404(a)(3), not 404(a)(1):

> In Rule 404(a) the general position is taken that character evidence is not admissible for the purpose of proving that the person acted in conformity therewith, subject, however, to several exceptions, one of which is character evidence of a witness as bearing upon his credibility. The present rule develops *that* exception.[24]

▇▇▇ D.R.E. 404 addresses the admissibility of character evidence to prove conduct. If the character trait is pertinent to the offense charged, it may be offered by the accused (or the prosecution to rebut the same) pursuant to D.R.E. 404 because it may negate guilt (or, if offered by the prosecution to rebut the same, to rebut innocence). By its terms, D.R.E. 608 addresses how and when the "credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation."[25] The trial judge is in the best position to determine whether the witness's character has been "attacked" and whether the introduction of character evidence is pertinent to the witness's credibility pursuant to this rule.[26]

The record in this case shows that the defendant's reputation for honesty was a pertinent character trait to the crimes charged. Manna sought to use D.R.E. 404(a)(1) to present this evidence to raise a reasonable doubt as to his guilt. Because the proffered testimony was both relevant and pertinent to the offense charged and Manna's guilt or innocence, the limitation of D.R.E. 608(a)(2) does not apply. Accordingly, the trial judge erred as a matter of law in limiting the application of D.R.E. 404(a)(1) by D.R.E. 608(a)(2).

▇▇▇▇ The trial judge also found that even if the proffered character evidence was otherwise admissible, it was subject to exclusion on grounds of prejudice, confusion or waste under D.R.E. 403 because "it was apparent that the only point to be served by the introduction of the evidence in question was to evoke sympathy for the defendant." While a trial judge's rulings

23. *Weber*, 457 A.2d at 680.

24. FED.R.EVID. 608 advisory committee notes (emphasis added).

25. *See* D.R.E. 608.

26. To this extent, Manna's argument that the prosecutor's cross-examination of him "attacked" his character and automatically "opened the door" to allow him to present witnesses to rehabilitate his character, misses the mark. His choice to testify does not automatically allow him to call character witnesses to bolster his credibility. *Graves v. State*, 1994 WL 416533, at *3 (Del.Supr.) ("It is never permissible for any witness to attempt to bolster the testimony of another witness by attesting to another's credibility.").

The Third and Ninth Circuit Courts of Appeal have found that "whether a witness's credibility has been attacked depends on the nature of the opponent's impeaching evidence." *Renda v. King*, 347 F.3d 550, 554 (3d Cir. 2003); *accord United States v. Dring*, 930 F.2d 687, 691 (9th Cir.1991). Trial judges "are in the best position to observe the impact of improper statements at the time they are made, to determine the extent to which they may have affected the jury or the parties, and to remedy any ill effects." *Adams v. Luciani*, 2003 WL 22873038, at *4 (Del.Supr.). Accordingly, the trial judge, in his discretion, is in the best position to determine whether "given conduct constitutes a direct or indirect attack on a witness's character for truthfulness" within the meaning of D.R.E. 608. *See Dring*, 930 F.2d at 691–92.

on character evidence under Rule 403 should rarely be disturbed on appeal absent a showing that the trial judge abused his discretion,[27] that showing has been made in this case.

We must reject the trial judge's conclusion that the only point to be served by the proffered character evidence was to evoke sympathy for the defendant. Character evidence, by its nature, may raise a reasonable doubt as to a defendant's guilt. Proof of a trait of character "may be made by testimony as to reputation or by testimony in the form of an opinion."[28] While the number of the character witnesses is subject to the discretion of a trial judge,[29] precluding Manna from calling any witnesses at all to prove a relevant and pertinent character trait constituted an abuse of discretion that warrants a new trial.[30]

### III.

 The judgment of the Superior Court is **REVERSED** and this matter is **REMANDED** for a new trial in accordance with this opinion.[31]

---

**27.** *United States v. Clifford*, 704 F.2d 86, 89 (3d Cir.1983) (citing *United States v. Long*, 574 F.2d 761, 766–68 (3d Cir.1978)); *United States v. Hewitt*, 634 F.2d 277, 280 (5th Cir. Unit A Jan.1981) ("We are mindful of the Supreme Court's admission that Courts of Appeals should disturb rulings by trial courts on character evidence 'rarely and only on clear showing of prejudicial abuse of discretion.'") (quoting *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168 (1948)).

**28.** D.R.E. 405(a). There is no contention in this appeal that the proffered evidence would not have been in compliance with this rule. *See generally* WEINSTEIN'S FEDERAL EVIDENCE §§ 405.01–405.05.

**29.** D.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."). *See generally Michelson*, 335 U.S. at 480, 69 S.Ct. 213 ("[C]ourts of last resort have sought to overcome danger that the true issues will be obscured and confused by investing the trial court with discretion to limit the number of such witnesses and to control cross-examination. Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear show-ing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.").

**30.** *Hewitt*, 634 F.2d at 280 (finding that the trial judge's refusal to permit the introduction of any character evidence an abuse of discretion); *United States v. Darland*, 626 F.2d 1235, 1237 (5th Cir.1980) ("We hold that where the character evidence offered affects a trait relevant to the crime charged, to deny introduction of such evidence and to refuse an appropriate charge to the jury constitutes both plain error and an error affecting substantial rights.").

**31.** Because we reverse on the first issue raised, we need not address Manna's second argument in more detail than here for purposes of the new trial. Manna sought a missing evidence instruction because certain notes were used to write the police report and were unavailable. He conceded there was no bad faith and did not demonstrate prejudice. We conclude that there was no abuse of discretion in denying the requested missing evidence instruction based on the sufficiency of the other evidence in the record. *See Wainer v. State*, 2005 WL 535010, at *3 (Del.Supr.) ("At most, Wainer has shown that the destruction of the notes was negligent, but he has not shown bad faith, prejudice, or insufficient evidence. Accordingly, the Superior Court properly denied Wainer's request for a missing evidence instruction.").