IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICAH O. CUFFEE, §
§
 Defendant Below, § No. 613, 2013
 Appellant, §
§
  v. § Court Below: Superior Court
§ of the State of Delaware,
STATE OF DELAWARE, § in and for Kent County
§ Cr. ID No. 1209013919
 Plaintiff Below, §
 Appellee. §

Submitted: August 8, 2014
Decided: October 14, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA** Justices.

## O R D E R

This 14th day of October 2014, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

(1) The defendant-appellant, Micah O. Cuffee, appeals from his convictions for Attempted Theft, Conspiracy in the Second Degree, and Criminal Mischief after a Superior Court jury trial. On appeal,[1] Cuffee claims: (i) the Superior Court erred in allowing the State to amend the indictment before trial and during trial; (ii) the Superior Court erred in admitting a picture of Cuffee the night of his arrest; (iii) the prosecutor made improper statements during his opening and

_____

[1] Cuffee was represented by counsel at trial, but waived his right to counsel on appeal and was permitted to represent himself.

closing arguments; (iv) the State committed discovery and *Brady*[2] violations by failing to produce a recording of police radio communications; and (v) Cuffee was deprived of his right to self-representation.[3] We find no merit to these claims and affirm the judgment of the Superior Court.

(2) On the night of September 19, 2012, a resident of a development located near Walker Road in Dover heard a vehicle, a screeching, metallic noise like something was being dragged, and voices outside the back of her townhouse. Office buildings, which were closed for the day, were located behind the caller's townhouse. The resident called 911 to report the noises at approximately 10:30 p.m. Corporal Gregory Hopkins and other members of the Dover police responded to the 911 call.

(3) Initially, Hopkins and the other police officers checked businesses and communities along Walker Road for the source of the reported noises. Hopkins checked 1155 Walker Road and did not see anything there. Hopkins then went to

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] In the fact section of his opening brief, Cuffee complains that a juror, who was identified by the prosecutor on the second day of trial as somebody he had spoken to at the gym ten to fifteen years earlier, remained on the on the jury over his objections. At the request of Cuffee's counsel, the juror was asked in chambers if he recognized either the prosecutor or defense counsel and he stated that he only recognized the attorneys from the trial. Cuffee's counsel did not request removal or any other action with respect to the juror. Cuffee did not present the merits of an argument concerning this juror in his opening brief (or his reply brief) and has therefore waived a claim regarding the juror. Supr. Ct. R. 14(b)(vi)(A)(3) (providing that appellant must state merits of argument in opening brief or argument will be waived); *Monroe v. State*, 2010 WL 5050863, at *2 (Del. Dec. 8, 2010) (declining to address claim referenced in summary of argument but not raised in argument section of brief).

the 911 caller's townhouse and spoke to her about what she had heard in order to pinpoint the location of the noises. Based on that conversation, Hopkins drove back to 1155 Walker Road, which was located behind the townhouse.

(4) Hopkins walked around the building located at 1155 Walker Road and saw four, disconnected air conditioning units behind the building and near a shed. The air conditioners had been cut from the building located at 1155 Walker Road. Hopkins reported his findings and it was decided that he would stay in the area to conduct surveillance in case someone returned to pick up the disconnected air conditioners. Other officers set up a perimeter near Walker Road.

(5) Shortly after Hopkins concealed himself under some trees to monitor the area where the air conditioners were located, he observed a maroon minivan, with no headlights on, driving in from Walker Road. After driving into the parking lot that was closest to the disconnected air conditioners, the minivan began backing up over a bed of rocks near the air conditioners and became stuck.

(6) Hopkins watched the minivan occupants attempt to remove the minivan from the rocks. They were unsuccessful and called somebody for assistance. Although Hopkins could see the occupants of the minivan walk around it, he could not see them at all times. Hopkins observed a white pick-up truck drive in from Walker Road and tow the minivan off of the rocks. Cuffee's cousin, Walter Cuffee, testified that Cuffee called him the night of September 19, 2012 for

3

assistance. Walter Cuffee drove his white pick-up truck to Walker Road, where he testified that he picked up Cuffee and Mark McDonald, and then helped Cuffee and McDonald tow the minivan from the rocks. After Hopkins watched the white pick-up truck and maroon minivan leave the parking lot, he saw that the disconnected air conditioners were no longer where he had previously seen them. Hopkins radioed police units on Walker Road to report that the air conditioners had been taken and that both the white pick-up truck and maroon minivan should be stopped. Hopkins then walked around the area and saw that the air conditioners had been moved to the other side of the shed.

(7) Police stopped the white pick-up truck and maroon minivan. Cuffee was driving the minivan and McDonald was the passenger. Both men were arrested. In a search of the minivan, the police found a pair of bolt cutters, Channellock pliers, a flashlight, and two pairs of work gloves. All of the seats, except for the driver seat and front passenger seat, had been removed from the minivan. Cuffee's daughter testified that she owned the minivan and that the equipment in the minivan belonged to her husband.

(8) The jury found Cuffee guilty of Attempted Theft, Conspiracy in the Second Degree, and Criminal Mischief. Cuffee was declared a habitual offender under 11 *Del. C.* § 4214(a) and sentenced to eight years of Level V incarceration for Attempted Theft, two years of Level V incarceration, suspended for one year of

4

Level III probation, for Conspiracy in the Second Degree, and a fine of $250 for Criminal Mischief. This appeal followed.

(9) Cuffee first argues that the Superior Court erred in granting the State's motions to amend the indictment before and during the trial. This Court reviews the Superior Court's decision on a motion to amend an indictment for abuse of discretion.[4] The Superior Court "may permit an indictment . . . to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."[5] Amendment is not permitted if it changes an essential element of the charged offense or prevents the defendant "from pursuing his initial defense strategy."[6] In the absence of prejudice to the defendant, amendment is permitted for mistakes in form such as correcting an incorrect statutory designation or the name of a robbery victim.[7]

---

[4] *Norwood v. State*, 2003 WL 29969, at *3 (Del. Jan. 2, 2003) (citing *Coffield v. State*, 794 A.2d 588, 590-91 (Del. 2002)).

[5] Super. Ct. Crim. R. 7(e).

[6] *Mitchell v. State*, 2014 WL 1202953, at *3 (Del. Mar. 21, 2014) (quoting *O'Neil v. State*, 691 A.2d 50, 55 (Del. 1997)).

[7] *Coffield*, 794 A.2d at 593-94 (affirming amendment of indictment to change name of robbery victim where name was not essential element of crime ); *Johnson v. State*, 1999 WL 1098173, at *3 (Del. Nov. 2, 1999) (finding no plain error in Superior Court permitting amendment of indictment to correct statutory section); *Robinson v. State*, 600 A.2d 356, 359 (Del. 1991) (holding Superior Court did not err as matter of law by allowing amendment of indictment to correct statutory citation and add *mens rea* element); *Claire v. State*, 294 A.2d 836, 838 (Del. 1972) (finding trial judge did not abuse discretion in allowing amendment of information to correct obvious statutory citation error).

5

(10)   Count I of the indictment originally stated:

ATTEMPTED THEFT, a felony, in violation of Title 11, Section 531 of the Delaware Code of 1974 as amended.

MICAH O. CUFFEE on or about the 19th day of September, 2012, in the County of Kent, State of Delaware, did attempt to take property belonging to Catholic Charities, valued at more than $1,000.00, which acts, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct planned to culminate in the commission of theft, in violation of 11 Del. C. § 843.[8]

Before trial, the Superior Court granted the State's motion, over Cuffee's objections, to amend Counts I (Attempted Theft) and Count III (Criminal Mischief) of the indictment to change the name of the theft victim from Catholic Charities (the name outside the building at 1155 Walker Road) to Frank Everett (the actual owner of the building and air conditioning units).  On the second day of trial, the Superior Court granted, over Cuffee's objections, the State's motion to amend the indictment to change the dollar amount from $1,000 to $1,500 and the statutory citation from Section 843 to Section 841.  The Superior Court concluded that the amendments simply corrected pure errors, the change in dollar figure helped the defendant because it required the State to prove a higher amount, and Cuffee had been on notice of the charges against him from the beginning of the case.

---

[8] Superior Court Docket, D.I. 6.

6

(11)  The Superior Court did not err in permitting amendment of the indictment.  The original indictment put Cuffee on notice that he faced a felony charge for Attempted Theft.  Cuffee's primary defense was that the State's case was circumstantial and that nobody had observed him cut the air conditioners from the building or move the air conditioners.  The change in the name of the victim did not change the offense or prejudice Cuffee.

(12)  As far as the correction of the statutory citation, the original indictment pled the elements of Attempted Theft under 11 *Del. C.* § 841, not the elements of Attempted Theft by pretense under 11 *Del. C.* § 843.  Under Section 841, a person commits theft when they take the property of another with the intent to deprive the owner of their property.[9]  By contrast, a person commits theft by pretense under Section 843 when they obtain "property of another person by intentionally creating or reinforcing a false impression as to a present or past fact, or by preventing the other person from acquiring information which would adversely affect the other person's judgment of a transaction."[10]  Notwithstanding the incorrect statutory citation, the plain terms of the Attempted Theft count in the original indictment put Cuffee on notice of the offense that he had to defend himself against.

---

[9] 11 *Del. C.* § 841.

[10] 11 *Del. C.* § 843.

7

(13) Finally, the change in the dollar amount from $1,000 to $1,500 did not change the offense or prejudice Cuffee. Cuffee claims for the first time on appeal that he was prepared to defend himself against a misdemeanor charge rather than a felony (theft of property worth more than $1,500), but the indictment charged him with "ATTEMPTED THEFT, a felony" and Cuffee indicated at a pretrial hearing that he understood, as a habitual offender, he was likely to face an enhanced sentence and significant prison time if he was found guilty. Cuffee also suggests he was prejudiced because the amendment occurred after the prosecutor referred to the $1,000 figure in his opening statement and Frank Everett testified regarding the valued of the air conditioners.

(14) The record does not support this contention. In their closing statements, both the prosecutor and defense counsel stated that the relevant value was $1,500 or more. The jury instructions also contained the $1,500 figure. Everett testified that he had never purchased similar air conditioners for less than $1,000 each, so the total value of the four air conditioners easily exceeded both the $1,000 and $1,500 figures. Under these circumstances, Cuffee was not prejudiced by the amendment of the dollar amount in the indictment. A curative instruction regarding the dollar amount, which was not requested in the Superior Court, was also not necessary in light of the parties' references to the $1,500 figure in their

closing statements, the use of the $1,500 figure in the jury instructions, and Everett's testimony.

(15)  Cuffee next argues that the Superior Court erred in admitting a photograph taken of him on the night of his arrest because identification was not an issue and the prejudicial effect of the photograph outweighed any probative value. This Court reviews evidentiary rulings of the Superior Court for an abuse of discretion.[11]  "An abuse of discretion occurs when 'a court has . . . exceeded the bounds of reason in view of the circumstances, [or] . . . so ignored recognized rules of law or practice so as to produce injustice.'"[12]  Because use of police photographs risks suggesting to the jury that the defendant has a prior criminal record, admission of such photographs requires that: (i) the prosecution show a demonstrable need for introduction of the photographs; (ii) the photographs, if shown to the jury, must not imply that the defendant has a prior criminal record; and (iii) the introduction of the photographs must not draw attention to the source or implications of the photographs.[13]

---

[11] *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008).

[12] *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994) (quoting *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del. 1988)).

[13] *Brookins v. State*, 354 A.2d 422, 423 (Del. 1976).

9

(16) The State introduced the photograph into evidence to corroborate Hopkins' testimony that he believed Cuffee was wearing dark clothing the night of September 19, 2012. Wearing dark clothing could be consistent with someone trying to steal air conditioners at night without attracting attention. The photograph did not imply that Cuffee had a prior criminal record because it was taken in connection with Cuffee's arrest for the crimes on trial. Nor was any curative instruction necessary, as Cuffee contends for the first time on appeal, because the photograph did not create any implication that Cuffee had a prior criminal history. The photograph was relevant and not prejudicial to Cuffee. Accordingly, the Superior Court did not err in admitting the photograph.

(17) Cuffee next argues that the prosecutor made improper statements in his opening and closing arguments regarding Cuffee's presence at 1155 Walker Road at 10:30 p.m. on September 19, 2012 and to the harvesting of air conditioners. Because Cuffee did not raise these objections at trial, we review his prosecutorial misconduct claims for plain error.[14] This Court applies a three-step analysis when reviewing alleged prosecutorial misconduct under a plain error standard of review.[15] First, we determine if there was any prosecutorial

---

[14] Supr. Ct. R. 8.

[15] *Baker v. State*, 906 A.2d 139, 150 (Del. 2006).

10

misconduct.[16] If we find no prosecutorial misconduct, then our analysis ends.[17] If we do find prosecutorial misconduct, then we determine whether the misconduct clearly and plainly undermined confidence in the trial process.[18] If we find that the misconduct did not clearly and plainly undermine the trial process, then we determine whether the misconduct included repetitive errors that cast doubt on the integrity of the judicial process.[19]

(18) In his closing argument, the prosecutor stated it "was fair to say that through both sets of witnesses, Micah Cuffee, the defendant seated over here, on September 19, 2012, at around 10:30 p.m., was in the parking lot at 1155 Walker Road."[20] The prosecutor also referred to 10:30 p.m. being a suspicious time of night because business were closed, Hopkins observing the maroon minivan pull into 1155 Walker Road at 10:30 p.m. with the headlights turned off, the wisdom of using a minivan rather than a truck without a cap to transport stolen air conditioners at 10:30 p.m. in order to avoid raising suspicions, and to stealing air conditioners at 10:30 p.m. Cuffee claims there was no evidence or testimony to

---

[16] *Id.*

[17] *Mitchell*, 2014 WL 1202953, at *6.

[18] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[19] *Hunter v. State*, 815 A.2d 730, 733 (Del. 2002).

[20] Appendix to Opening Brief at A60.

11

support the prosecutor's argument that he was in the parking lot of Walker Road around 10:30 p.m. on September 19, 2012. We disagree.

(19) "A prosecutor is allowed and expected to explain all the legitimate inferences of the defendant's guilt that follow from the evidence."[21] A prosecutor cannot misrepresent trial evidence.[22] The record reflects that the 911 call reporting dragging noises and voices near Walker Road was made at 10:33 p.m. on September 19, 2012, Hopkins subsequently went to 1155 Walker Road, then spoke with the 911 caller, and then returned to 1155 Walker Road where he found the disconnected air conditioners and stayed in the area to see if the people who disconnected the air conditioners came back.

(20) Shortly after Hopkins hid to watch the area, he observed a maroon minivan, with its lights turned off, become stuck on rocks near the disconnected air conditioners. Approximately fifteen minutes later, Cuffee's cousin arrived to tow the minivan off the rocks. Shortly after the minivan left 1155 Walker Road, it was pulled over by the police and Cuffee was arrested. Bolt cutters, Channellocks, two pairs of gloves, and a flashlight were found in the minivan, which did not contain any seats other than the driver's seat and the front passenger seat. Given this record, the prosecutor's argument that Cuffee was at 1155 Walker Road around

---

[21] *Boatson v. State*, 457 A.2d 738, 742 (Del. 1983).

[22] *Morris v. State*, 795 A.2d 653, 659 (Del. 2002).

12

10:30 p.m. on September 19, 2012 attempting to steal air conditioners was based on legitimate and logical inferences of the evidence presented at trial and not improper.

(21) Cuffee is correct that the record reflects Hopkins would have observed the maroon minivan turn into Walker Road sometime after 10:30 p.m. and not 10:30 p.m. as the prosecutor stated in his closing argument, but this mistake does not constitute misconduct that clearly and plainly undermines confidence in the trial process or is emblematic of repetitive errors that cast doubt on the integrity of the judicial process. It is plain from the trial testimony that Hopkins observed the minivan at 1155 Walker Road after the 911 call.

(22) The prosecutor expressly acknowledged in his closing argument that this was a circumstantial case and that there was no eyewitness to Cuffee cutting or moving the air conditioners. Notwithstanding the lack of eyewitness testimony, the prosecutor argued that the evidence at trial supported a verdict that Cuffee was attempting to steal air conditioners from 1155 Walker Road the night of September 19, 2012. The record reflects no plain error in the prosecutor's references to Cuffee being in the parking lot of 1155 Walker Road around 10:30 p.m. on September 19, 2012.

13

(23) With respect to the comments regarding harvesting, the prosecutor stated in his opening argument that after the disconnected air conditioners were spotted at 1155 Walker Road:

> [T]he police made a quick decision to say, all right, well, it looks like somebody's harvesting air conditioners. It's fall, it's harvest time, so that must be what they are doing that night. So they decide to kind of secrete themselves around the area, go and conduct some surveillance.[23]

In his closing argument, the prosecutor described the bolt cutters, Channellocks, flashlight, and two pairs of work gloves found in the maroon minivan "as kind of an amateur air conditioning harvest kit."[24]

(24) Cuffee contends that there was no evidence or testimony supporting the prosecutor's argument that Cuffee was harvesting air conditioners on September 19, 2012. Again, we disagree. Given the evidence presented at trial, the prosecutor's argument that Cuffee was harvesting air conditioners on September 19, 2012 was a legitimate and logical inference from the evidence presented at trial. Thus, the prosecutor did not commit misconduct in referring to the harvesting of air conditioners in his opening and closing arguments.

(25) Cuffee next argues that the State's failure to produce recordings of police officers' radio communications the night of September 19, 2012 was a

---

[23] Appendix to Opening Brief at A57.

[24] *Id.* at A62-63.

14

violation of its discovery obligations and a *Brady* violation. During his examination of Hopkins, Cuffee's counsel asked him about the recording of the police officers' radio communications on September 19, 2012 and whether such recordings had been provided to the State or defense counsel. Hopkins testified that he did not know if the recordings were provided to the State or the defense.

(26) After Cuffee's counsel asked about production of the recordings again, the prosecutor requested a sidebar conference with the trial judge. The prosecutor objected to questions suggesting that the State had done something wrong with the recordings. He stated that he had a copy of the recordings, but that he did not believe Cuffee had requested the recordings in his discovery requests.

(27) Cuffee's counsel indicated that he was not stating that the State had done anything wrong, but that he wondered why the recordings were not provided to him and that he did not see a reference to the recordings in the State's discovery responses. Cuffee's counsel did not ask to listen to the recordings or make any other requests with respect to the recordings. The trial judge stated that if defense counsel had not requested the recordings, it was inappropriate for defense counsel to ask questions implying a cover-up. Cuffee's counsel then stated that he would not ask any more questions about the recordings.

(28) The prosecutor initially requested a curative instruction, but subsequently withdrew the request. On appeal, we granted the State's motion to

expand the record, over Cuffee's objections, to include a CD of the recordings. Cuffee was given the opportunity to listen to the recordings and he discusses the contents of those recordings in his reply brief.

(29)   Cuffee acknowledges that his counsel did not request a continuance to listen to the recordings, but nonetheless argues that the Superior Court should have granted a continuance *sua sponte* so Cuffee's counsel could review the recordings. In the event of a discovery violation, we consider: (i) the centrality of the error to the case; (ii) the closeness of the case; and (iii) the steps taken to mitigate the results of the error.[25]   A conviction will be reversed on the basis of a discovery violation only if the defendant's substantial rights are "prejudicially affected."[26] Assuming without deciding that Cuffee's discovery requests encompassed the recordings of the police radio communications, the failure to produce the recordings was not central to the case and Cuffee's substantial rights were not prejudicially affected.  The recordings of the police officers' radio communications are consistent with the testimony of the police witnesses at trial.[27]

---

[25] *Valentin v. State*, 74 A.3d 645, 649 (Del. 2013).

[26] *Id.* (quoting *Oliver v. State*, 60 A.3d 1093, 1096-97 (Del. 2013).

[27] In his reply brief, Cuffee focuses on alleged inconsistencies between the recordings and the testimony of police witnesses at a suppression hearing, rather than the police witnesses' trial testimony.  The police officers' testimony was substantially similar in both proceedings, but some of the testimony that Cuffee attacks in his reply brief (such as Hopkins' testimony that he found the air conditioners at "approximately 10:30 at night") did not occur at trial.  Answering Brief Appendix at B84.

16

(30) The recordings reflect that the police responded to the 911 call, there were additional communications with the 911 caller when the police could not initially identify the source of the noises that the 911 caller heard, Hopkins subsequently discovered the disconnected air conditioners at 1155 Walker Road and stayed in the area to see if anybody attempted to recover the air conditioners, Hopkins observed the maroon minivan become stuck on rocks near the air conditioners and receive assistance from a white truck, and Hopkins initially reported the air conditioners had been taken when the minivan and truck left 1155 Walker Road, but then subsequently reported that the air conditioners had been moved.

(31) The consistency between the recordings and the police officers' testimony at trial is not helpful to Cuffee's case. Cuffee argues that there are timing inconsistencies between the recordings and the police officers' testimony, but both the recordings and trial testimony are consistent with the police investigating noises near Walker Road after 10 p.m. on September 19, 2012. The lack of siren noises in the recordings is not relevant here or helpful to Cuffee, because unlike the defendant in *Valentin v. State*,[28] Cuffee was not arrested for fleeing the police and did not defend himself on the grounds that he was unaware the police were following him because he did not hear any sirens.

---

[28] 74 A.3d at 651-52.

(32) As far as the police officers' observation of a truck with a tarp on Route 8 while Hopkins was watching the maroon minivan become stuck on rocks near the disconnected air conditioners or the possible sighting of a vehicle with an air conditioner while Cuffee was being arrested (and while the air conditioners at issue were still at 1155 Walker Road), this information essentially amounts to the existence of other vehicles that could transport or were transporting air conditioners. Unlike the maroon minivan driven by Cuffee, these vehicles were not observed near the disconnected air conditioners at 1155 Walker Road after a nearby resident heard voices and dragging noises. The existence of these other vehicles adds little to Cuffee's defense. Accordingly, we conclude that Cuffee is not entitled to reversal of his conviction on the basis of a discovery violation.

(33) Cuffee's claims of a *Brady* violation are also without merit. A *Brady* violation occurs when there is: (i) evidence that is favorable to the accused because it is either exculpatory or impeaching; (ii) the State suppresses that evidence; and (iii) the suppression prejudices the defendant.[29] *Brady* prejudice requires "a reasonable probability that, had the evidence been disclosed to the defense, the

---

[29] *State v. Wright*, 67 A.3d 319, 324 (Del. 2013).

result of the proceeding would have been different."[30] "A 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.'"[31]

(34) As previously discussed, the dispatch recordings are not exculpatory or impeaching of the police witnesses' testimony. The recordings are consistent with the police officers' testimony at trial. Even if there is information in the recordings that is marginally favorable to Cuffee's defense (such as the existence of other vehicles that could transport or were transporting air conditioners), Cuffee has not shown that the suppression of this information undermines confidence in the outcome of the trial.

(35) Finally, Cuffee argues that the Superior Court deprived him of his constitutional right to represent himself. We review the alleged denial of a defendant's constitutional right to self-representation *de novo*.[32] Cuffee filed his first motion to represent himself on February 1, 2013 and then withdrew that motion at a hearing on February 4, 2013. Cuffee filed his second motion to represent himself on May 15, 2013. At a May 20, 2013 hearing, Cuffee informed

---

[30] *Id.*

[31] *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[32] *Brathwaite v. State*, 2006 WL 1911132, at *1 (Del. July 10, 2006) (citing *Stigars v. State*, 674 A.2d 477, 479 (Del. 1996)).

19

the Superior Court he had discussed his case with his counsel and he was satisfied with some of his counsel's actions. Cuffee stated that he did not want:

> to just keep filing motions, however, I was satisfied with some of what Mr. Stiller said today, but at the same time I don't want to disqualify myself from filing a motion should I have to and say the Court comes back at a later date and says, well, two times, now I'm just not going to accept it. I want to—if I could, I would just like to delay the hearing until we come to some type of meeting of the mind.[33]

The Superior Court informed Cuffee that it would not take any action with respect to his motion that day because it appeared that Cuffee was uncertain as to whether he wished to proceed with his motion to represent himself and Cuffee confirmed that was the case. Cuffee also confirmed that it would be acceptable for him to have more time to consider whether he wished to represent himself. After this hearing, Cuffee did not renew his motion to represent himself or give the Superior Court any indication that he wished to proceed *pro se* until the jury returned a guilty verdict.

(36) "A defendant may waive the right to self-representation after asserting it."[34] A defendant's failure to reassert a request to proceed *pro se* can establish

---

[33] Appendix to Appellant's Opening Brief at A23.

[34] *Brathwaite v. State*, 2006 WL 1911132, at *2 (citing *Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir. 2000)).

20

waiver, if reassertion of the request would not be futile.[35] Cuffee indicated at the May 20, 2013 hearing that he was not certain that he wished to proceed *pro se*. The record reflects that Cuffee was well-aware of his right to represent himself and more than capable of asserting that right. There is no indication that a renewal of his motion to represent himself would have been futile.

(37) It was not until after the jury returned a guilty verdict that Cuffee mentioned his prior motion to proceed *pro se* to the Superior Court. Under these circumstances, "the only plausible explanation for [Cuffee's] conduct is that he waived his to proceed *pro se* in favor of exercising his constitutional right to counsel."[36] Given Cuffee's failure to reassert his right to represent himself, it was not necessary for the Superior Court to hold another hearing to determine whether Cuffee had knowingly and intelligently waived his right to counsel.

NOW, THEREFORE, IT IS ORDERED that the judgment of convictions in the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Randy J. Holland*
Justice

---

[35] *Id.*

[36] *Id.*

21