IN THE SUPREME COURT OF THE STATE OF DELAWARE

CASSANDRA NEWTON, § 
§ No. 200, 2022
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 2101006787
STATE OF DELAWARE, §
§
Appellee. §

Submitted: January 25, 2023
Decided: March 23, 2023

Before **SEITZ,** Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## <u>**ORDER**</u>

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Delaware State Police arrested Cassandra Newton for verbal threats she made to a state trooper at the Delaware Division of Motor Vehicles. A New Castle County grand jury indicted Newton for harassment, disorderly conduct, and terroristic threatening of a public servant or public official. After a two-day trial, a Superior Court jury found Newton guilty of harassment and disorderly conduct. The court sentenced her to an aggregate of one year and thirty days at Level V incarceration, with credit for two days served, suspended for one year of Level II probation.

(2) On appeal, Newton raises one issue contesting her conviction—the Superior Court erred when it granted the State's motion *in limine* to exclude Newton's anticipated testimony that Corporal Snook, the state trooper subject to Newton's harassment, had previous contact with her. Newton wanted to testify that Corporal Snook arrested her eleven months earlier which allegedly caused her miscarriage, and seeing him again triggered an "emotional, visceral reaction," to what she claimed was past trauma. The Superior Court excluded the testimony under Rules 702 and 403 of the Delaware Rules of Evidence. We affirm Newton's conviction because the Superior Court did not exceed its discretion to exclude her testimony under Rule 403.

(3) Newton's first encounter with Corporal Snook occurred on February 9, 2020, when he arrested her and charged her with Resisting Arrest, Disorderly Conduct, and Criminal Trespass. Newton claimed that she was pregnant at the time of the arrest, but suffered a miscarriage immediately after, for which she blamed Corporal Snook.[1]

(4) Eleven months later, in January, 2021, Newton encountered Corporal Snook at the Department of Motor Vehicles where he was working on a security

---

[1] Corporal Snook was cleared of any wrongdoing after an investigation into Newton's allegations.

detail. According to Newton, the sight of Corporal Snook "triggered" her.[2] Jennifer Popo, Newton's mother, observed that Newton sounded "very upset and excitable" when Newton called her from the DMV.[3] After spotting Corporal Snook, Newton began a barrage of verbal threats and abusive language towards him, the most serious being a threat to "follow him home and kill him."[4] Newton also yelled other expletives and disparaging remarks towards Corporal Snook, calling him, among other things, a "murderer" and a "[b]aby [k]iller."[5]

(5) After her arrest, a New Castle County grand jury indicted Newton on three counts: terroristic threatening of a public official or public servant, harassment, and disorderly conduct. Before trial, the State moved *in limine* to exclude all testimony related to Newton's February 9th arrest and her miscarriage, including her use of the phrase "[b]aby [k]iller." The State argued that her testimony was irrelevant to the charges, unfairly prejudicial, and there was no evidence that Corporal Snook caused Newton's miscarriage. In response, Newton argued that the evidence was critical to her state of mind and lack of intent. According to Newton,

---

[2] App. to Opening Br. at A69. Although Newton testified that the sight of Corporal Snook "triggered" her, she was clear and purposeful in her actions, testifying "I know exactly what I said to him. I called him a murderer. And that's what I yelled…. That's exactly what I said to him." *Id.* at A69.

[3] *Id.* at A67.

[4] *Id.* at A55, A74.

[5] *Id.* at A9, A44, A46–47, A74. Newton denied threatening Corporal Snook, and denied making derogatory statements towards him, but admitted that she called him a "murderer." *Id.* at A69, A72–73.

she needed to testify about the arrest and miscarriage to show that her actions at the DMV were a "visceral triggered reaction" and "coping mechanism to grief" rather than an intent to harass, annoy, inconvenience, or alarm.[6]

(6)    The Superior Court granted the State's motion *in limine* on two grounds: (i) the testimony was medical evidence that required medical or expert proof; and (ii) the testimony was more prejudicial than probative because it would have led to juror confusion and required a trial within a trial to connect the February 9th arrest and miscarriage to the threats made towards Corporal Snook at the DMV. The Superior Court excluded all testimony related to the February 9th arrest and miscarriage but allowed a statement that Newton and Corporal Snook knew each other from an interaction that occurred eleven months prior. The court suggested to the State that it exclude any reference to "baby killer," but allowed the State to use the word "murderer."[7]

(7)    Following a two-day trial, a jury convicted Newton of disorderly conduct and harassment and acquitted her of the more serious charge of terroristic threatening of a public official or public servant. The Superior Court sentenced Newton to an aggregate of one year and thirty days at Level V incarceration, with credit for two days served, suspended for one year of Level II probation. The court

---

[6] *Id.* at A25.
[7] *Id.* at A28-29.

also imposed other conditions, including no-contact orders and continued mental health counseling.

(8) Newton argues on appeal that the Superior Court erred when it granted the State's motion *in limine* and excluded her anticipated testimony regarding Newton's February 9th arrest, her miscarriage, and her use of the phrase "baby killer." She makes three points: (i) the excluded testimony was critical to negate the intent element of harassment and disorderly conduct; (ii) no medical or expert proof was required to substantiate the evidence; and (iii) excluding her testimony deprived her of her constitutional right to present a defense.

(9) Newton did not make her constitutional claim below. Thus, we review for plain error.[8] Plain error must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9] As explained below, the Superior Court properly excluded Newton's anticipated testimony under Rule 403. Thus, there was no plain error.[10]

(10) We review evidentiary rulings to decide whether the Superior Court exceeded its discretion.[11] Our review is two-fold. First, we determine whether the Superior Court exceeded "the bounds of reason in view of the circumstances" and

---

[8] *Goode v. State*, 136 A.3d 303, 312 (Del. 2016) (citing *Nance v. State*, 903 A.2d 283, 285 (Del. 2006)).
[9] *Williams v. State*, 796 A.2d 1281, 1284 (Del.2002).
[10] *United States v. Sheffer*, 523 U.S. 303, 308 (1998) (explaining that evidence properly excluded under Rules of Evidence is not constitutional error).
[11] *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008).

ignored "recognized rules of law or practice so as to produce injustice."[12] If the Superior Court exceeded its discretion and improperly excluded evidence, then we decide whether excluding the evidence caused such significant prejudice to deny the appellant a fair trial.[13]

(11) Newton argues that the Superior Court erred in excluding the testimony under Rule 403 for two reasons. First, Newton contends that the Superior Court used the wrong standard to decide whether her anticipated testimony should be excluded. She claims that, under Rule 403, the prejudicial effect must *substantially* outweigh the probative value. Second, Newton argues that, applying the correct standard, the Superior Court erred because her testimony was highly probative of her "motive or belief or the precipitating factor for her behavior" to negate the intent element of the charged crimes, and this probative value was not *substantially* outweighed by any possibility of confusion or conducting a trial within a trial.[14]

(12) Even if the Superior Court did not use the word "substantial" in its decision, the Superior Court's ruling was still fundamentally correct—its probative value did not substantially outweigh its prejudicial effect. Rule 403 allows the trial court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

---

[12] *Firestone Tire and Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del. 1988).
[13] *Id.*; *Manna*, 945 A.2d at 1153.
[14] Opening Br. at 16-17.

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Newton's anticipated testimony went to her motive, not her intent, and therefore had minimal probative value. To secure a conviction, the State had to prove that it was Newton's conscious object (intent) to threaten Corporal Snook which caused him alarm, annoyance, or harassment. The evidence established just that—Newton admitted that she screamed at Corporal Snook, and witnesses at the DMV testified that she threatened to follow him home and kill him. Newton's motive—her belief, reason, or justification for her conduct—was immaterial to proving or disproving the elements of the charged crimes.

(13) The prejudicial effect of Newton's testimony also substantially outweighed its minimal probative value. As explained by the Superior Court, Newton's testimony would have created a trial within a trial, requiring the jury to consider evidence regarding the existence and cause of Newton's miscarriage before addressing the elements of the charged crimes. The testimony likely would have resulted in juror confusion, causing the jury to conflate (as Newton has) the two distinct concepts of motive and intent, only one of which had any bearing on the trial. Lastly, evidence related to such a difficult, traumatic topic would have inflamed passions and invoked juror sympathy. As such, the prejudicial effect of the testimony was significant enough to substantially outweigh the minimal probative value of Newton's proffered testimony.

7

(14) The Superior Court did not exceed its discretion in excluding the evidence under Rule 403. We need not reach the other grounds relied upon by the Superior Court to exclude the anticipated testimony.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice